## JULIAN M. BAKER v. J. G. M. CORDON.

### *Proceeding in Contempt.*

In a proceeding for contempt, the judge finds the facts, and if it be ascertained that a judicial mandate is wilfully and intentionally disregarded, the penalty is incurred, whether an indignity to the court or contempt for its authority was or was not the motive. In this case the defendant is held guilty of contempt in disobeying an order enjoining him from carrying on the business, which with his good will he had sold to the plaintiff under an agreement to discontinue it himself.

(*State* v. *Yancey*, 1 Car. L. Rep., 133; *State* v. *Woodfin*, 5 Ired., 199; *Moye* v. *Cogdell*, 66 N. C., 403; *Moore*, 63 N. C., 397; *Isler* v. *Murphy*, 71 N. C., 436; *Pain* v. *Pain*, 80 N. C., 322, cited and approved.)

RULE on defendant to show cause why he should not be attached for contempt, heard at Spring Term, 1881, of EDGECOMBE Superior Court, before *Shipp, J.*

The pleadings show that in May, 1880, Joseph H. Baker, father of the plaintiff, for the benefit of plaintiff and for the purpose of starting him in business on his own account, bought of defendant, who for a number of years had been engaged in the business of selling drugs and medicines and preparing prescriptions of physicians in the town of Tarboro, his stock of drugs, &c., and the good will of his business, for $1,500, then paid, and the defendant agreed in consideration thereof not to carry on said business in the town while the plaintiff was engaged in it.

The defendant is charged with violating an injunction, issued in pursuance of an interlocutory order in the cause and restraining him from "commencing and engaging in and carrying on the said business of selling drugs and medicines, and preparing prescriptions in the town of Tarboro." Upon a rule to show cause why he should not be attached for contempt in disobeying the order, and on the coming in of the answer, evidence was offered and heard, from which the court finds the following facts:

Within a week after the denial of the defendant's application for a dissolution of the restraining order, which the record discloses was on the 22nd day of February, 1881, the defendant conveyed by a bill of sale to Lane Lawrence and J. J. Britt, his entire stock of drugs and medicines, bought since the making the contract mentioned in the pleadings, and which he had been forbidden to dispose of in the way of business; and immediately thereafter, professing to act as manager and superintendent of his vendees, proceeded in the same building and room to sell and dispose of the same goods, and to prepare and fill prescriptions as he had before done. Lawrence and Britt are farmers residing in the country several miles distant from the town, have no

practical knowledge of the drug business, gave it no personal attention, and left it entirely to the conduct and control of the defendant.

The business as carried on depends entirely on the good will of the defendant, and the patronage extended to the new firm consists largely of that possessed by the defendant before. Lawrence and Britt have no knowledge or skill in dealing with drugs; and the reason they assign for becoming purchasers is that they are sureties to the defendant for the money borrowed and used in payment for the stock, and they took the assignment for their indemnity against loss. The stock has had accessions since they became owners, and they have contracted with the defendant to pay him for his services. Britt has declined an offer from two persons to purchase the stock and discharge the notes on which himself and Lawrence are co-sureties.

There are now three drug stores in the town, while at the time of sale to the plaintiff's father there was but one other besides that of the defendant. There is no finding that the sale to Lawrence and Britt, and the continued prosecution of the business by the defendant in their name, was an attempted evasion of the force and effect of the injunction, and none can be drawn by us from the recited facts.

The court adjudged that the acts of the defendant were within the purview of the prohibitory mandate, and in contempt of the authority of the court, and sentenced him for his offence to an imprisonment in the county jail for the term of ten days. From this judgment the defendant appeals.

*Messrs. Battle & Mordecai*, for plaintiff.
*Mr. John L. Bridgers, Jr.*, for defendant.

SMITH, C. J., after stating the facts. It is quite manifest the injunction contemplated (and such is a fair interpreta-

tion of the words in which its extent is expressed) the defendant's personal disconnection with the drug business in the town, and the securing to the plaintiff the full measure of the expected fruits of his father's contract. Under the subsequent arrangement by which other proprietors are nominally substituted for himself, and he remains in possession of the assigned stock and continues to deal with it in all respects under the supervision of no superior, as before, for all practical objects contemplated in the order, and with the same injurious consequences to the plaintiff, the defendant is " engaged in and carries on the business of selling drugs and medicines and preparing prescriptions," in direct disregard of the commands of the writ. He still pursues his calling, from which he is required to desist, doing the very acts inhibited, and not the less so because in the form of an assumed agency for other absent owners. Full obedience to the mandate required his personal separation from the drug business, and that he should neither be instrumental in inducing others to embark in it, or carry it on himself within the prescribed limits. A less comprehensive meaning given to the terms of the order, and the exemption of the facts of the present case from the scope of its operation, would be to permit its essential and manifest purpose to be defeated, and render illusory the relief it professes to afford. After the first sale made with the understanding that the defendant would retire, and by refraining from competition leave to his successor the good will and patronage he had secured, upon the assumed existence of which understanding the restraint is imposed, and but a few days after his non-successful effort to have the injunction annulled, he transfers the very stock he was prohibited from using and disposing of in the occupation of a druggist, to two persons without knowledge or experience, and who exercise no controlling supervision in the management, and himself, with no perceptible change except in the name

of the proprietors, continues precisely as he had done, to deal in the articles and to fill prescriptions for those who might apply. Surely such acts might be deemed, notwithstanding a valid assignment, evasive of the personal obligation imposed, and a violation of the restraining order.

We do not in thus holding say, nor do we suppose that the defendant could not have entered the drug store of another and acted in the subordinate character of clerk to the proprietor, without over-stepping the restraints of the order; but his action and direct agency in this transaction, with the obvious design that the business he was then engaged in should be still carried on by himself, though nominally for others, renders him amenable to the charge of disobeying the mandate of the court, and not the less so on account of the assumed agency.

The brief filed by defendant's counsel points us to two alleged errors in the action of the court.

1. The defendant was entitled to a jury trial of the controverted facts:

The exception is untenable. The proceeding by attachment for violating an order of the court made in furtherance of a pending action, is necessarily summary and prompt, and to be effectual it must be so. The judge determines the facts and adjudges the contempt, and while he may avail himself of a jury and have their verdict upon a disputed and doubtful matter of fact, it is in his discretion to do so, or not. *State* v. *Yancey,* 1 Car. L. Rep., 133; *State* v. *Woodfin,* 5 Ired., 199; *Moye* v. *Cogdell,* 66 N. C., 403; *Crow* v. *State,* 24 Texas, 12.

But if it were not so, it is sufficient in meeting the exception, to say, that a jury trial was not demanded and the judge proceeded to pass upon the case, if not with the consent, at least without objection from either party. *Isler* v. *Murphy,* 71 N. C., 436.

2. The disavowal of the imputed intent purges the contempt and exonerates the defendant:

This objection rests upon a misapplication of the rule laid down and acted on in the matter of *Moore* and others, 63 N. C., 397. That rule is confined to the "class of cases" in the language of the Chief Justice who delivers the opinion, "*where the intention to injure* constitutes the gravamen " of the offence. The violation of a judicial mandate stands upon different ground, and the only inquiry is whether its requirements have been wilfully disregarded. If the act is intentional, and violates the order, the penalty is incurred whether an indignity to the court, or contempt of its authority, was or was not the motive for doing it. A party is not at liberty by a strained and narrow construction of the words, and a disregard of the obvious and essential requirements of the order, to evade the responsibility which attaches to his conduct. In an honest desire to know the meaning and to conform to its directions, a mistaken interpretation of doubtful language would be a defence to the charge, but when its language is plain and the attempt is made to escape the force and defeat the manifest purposes of the order, by indirection, the penalty must be enforced, or the court would be unable to perform many of its most important functions. Bat. Rev., ch. 24, § 1, par. 4. High on Injunction, § 852 ; *Pain* v. *Pain*, 80 N. C., 322.

There is no error, and this will be certified.

No error. Affirmed.