This was a proceeding to punish as for contempt. The acts were alleged to have been committed by the respondents during the trial of the civil action of B. F. Long, administrator, against the North Carolina Railroad and others, in Iredell Superior Court, at its May Term, 1901, and upon the answers of the respondents and the affidavits filed in the matter, his Honor, Judge George H. Brown, found the following facts:
"1. That after the jury were empaneled in said action, the Court instructed them, in addition to the usual instruction, *Page 482 
that it was their duty to report to the Court the name of any person who attempted to talk to them about the case or in their presence, and had each member of the jury to so promise the Court upon their honor. He further advised the jury not to associate with anyone connected with the case during the trial.
"2. That while the trial was in progress, and just as the jury were discharged from Court on Friday evening, May 24, R. A. Ramsey placed himself at one of the exits of the court-house grounds, and there met juror B. C. Deaton and took him to a bar-room and treated him to a drink of whiskey, and remained with him for about two hours, until about the ringing of the bell for the night session of the Court, and was seen in earnest conversation with him. That after Deaton had gone back to the court-house, Ramsey declared it was his purpose in his communications with Deaton to influence his verdict in favor of the defendant in said cause, and that was his only business here, and the Court also finds as a fact that he attempted to carry out his said purpose.
"3. That J. A. Gorham is the law agent of the Southern Railway Company, which company is defending said suit in behalf of the said N.C. R. R. Co., and the State University R. R. Co., and has been present during the trial, sitting in the bar and assisting counsel therein, and that the fact was known to juror J. H. Brown. That after the adjournment of the Court at its night session on Friday, May 24, the said J. A. Gorham and the juror J. H. Brown were together, holding a long and close conversation in front of the Hotel Iredell, which continued for something like two hours, and until the hotel doors were closed for the night and most of the guests had retired. That the said law agent and juror talked about the case on trial. That about the hour of 11 o'clock, the said Gorham left his seat, went into the hotel, ascended partly up the first stairway, where he remained until *Page 483 
the juror Brown overtook him. That prior to this, juror Brown had left the seat where he sat talking with Gorham, crossed the street to the court-house well, and remained for two or three minutes and then returned, joining Gorham on the stairway; that both of said parties then went to the room of said Gorham, No. 18, on the third floor, locked the door and extinguished the light, and remained together until the next morning; that the said Brown went to Gorham's room in consequence of an agreement between them that Brown should occupy a bed in said Gorham's room and that it should cost him nothing — Gorham saying that it cost him nothing.
"4. That soon after, within a few minutes, after the said parties went to said room, three of plaintiff's attorneys, who had been advised of such proceedings, went to the said room, knocked upon the door twice, and received no response.
"5. That the next morning, about 7 o'clock, juror Brown went down to the hotel clerk and stated that he had occupied a bed in room No. 18, and would pay for it before leaving Court. That said Brown had not registered as a guest. That shortly after Brown left room 18, Gorham opened the door to start down, and saw Geo. B. Nicholson, one of the plaintiff's counsel, standing in the hallway and dodged back. That he shortly afterwards went downstairs and told the hotel clerk that Brown had staid in his room the night before, but also said that he did not know he was a juror until he (Brown) told him. The Court finds as a fact that said Gorham and said Brown knew each other as a juror and law agent before any of said conversations or actions took place.
"6. The Court finds as a fact that the object and purpose of the said J. A. Gorham and J. H. Brown was to improperly and unlawfully influence the verdict of the said J. H. Brown in favor of the defendant in the said case on trial.
"7. As to juror Deaton, by consent of all parties, the rule is discharged. *Page 484 
"8. As to L. C. Caldwell, and as to his conversation with R. A. Ramsey and juror Brown, and his connection with J. A. Gorham at the hotel, the Court is not able to find as a fact that said L. C. Caldwell had any unlawful or corrupt or wrongful purpose, and the rule as to him is therefore discharged."
Thereupon the following order and judgment were entered:
"Upon the foregoing facts, it is adjudged that J. A. Gorham, J. H. Brown and R. A. Ramsey are guilty of gross contempt of this Court, and have attempted to pervert the course of justice and to obstruct the enforcement of the civil remedies and rights of the plaintiff in the civil action pending in this Court, wherein B. F. Long, administrator, is plaintiff, and the N.C. R. R. Co. et al. are defendants, in the following particulars:
"1. That the said respondent J. A. Gorham has attempted to corrupt and influence J. H. Brown, one of the jurors sworn to try the said case, and has been guilty of conduct that tended to defeat, impair, impede and prejudice the rights and remedies of the plaintiff in the above-entitled suit.
"2. That the respondent R. A. Ramsey had attempted to corrupt and influence the juror B. C. Deaton, to the prejudice of the plaintiff, B. F. Long, administrator, in the above-entitled action, and has been guilty of conduct that tended to defeat, impair, impede the rights and remedies of the said B. F. Long, administrator, plaintiff in the said suit.
"3. That the respondent J. H. Brown, one of the jurors sworn to try the said case, has permitted himself to be corrupted and influenced by the respondent J. A. Gorham, to the prejudice of the plaintiff, B. F. Long, administrator, in the said suit, and has been guilty of conduct that tended to defeat, impair and impede the rights and remedies of the said B. F. Long, administrator, plaintiff in said suit, and the due and orderly course of justice. *Page 485 
"It is therefore adjudged that the respondents, J. A. Gorham, R. A. Ramsey, J. H. Brown, are guilty as for contempt of the Court in the particulars above specified and set forth, and it is further adjudged:
"1. That the said J. A. Gorham be committed to the common jail of this county for twenty days, and be fined fifty dollars ($50.00), and that he is further adjudged to pay the costs of this rule, and to be confined till the said fine and costs are paid.
"2. That the said R. A. Ramsey be committed to the common jail of Iredell County for twenty days, and shall pay a fine of fifty dollars ($50.00) and costs, and shall pay the fine and costs before being discharged.
"3. That the said J. H. Brown be fined fifty dollars and costs, and shall be in custody of the Sheriff till said fine and costs are paid."
From the judgment of the Court, the respondents appealed.
This proceeding in the Court below, as the record discloses, had for its object the punishment of the respondents as for contempt of Court, and the judgment was pronounced against them as for contempt. But the argument for the State here was also directed to the proposition that the judgment could be supported on the ground that the facts constituted a case of contempt of Court. In support of this proposition, numerous authorities were referred to, but in none of those jurisdictions were the statutory laws like those of our State on this subject. One of them, however, People v. Wilson,64 Ill. 195, 16 Am. Rep., 528-531, contains a most significant expression: it is said there: "The statute may *Page 486 
be regarded as a limitation upon the power of the Court to punish for any other than those acts committed in its presence. In this power would be necessarily included all acts calculated to impede, embarrass or obstruct the Court in the administration of justice. Such acts would be considered as done in the presence of the Court." But the peculiarities of the language used in our statutory law, and the decisions of this Court upon that law, forbid us from following such precedents. Chapter 14 of The Code, a compilation of the acts 1869 and 1870-71, concerning contempt, embraces the whole law of our State at the present time on that subject. With the origin, history and objects of those acts the older lawyers of the State are familiar, and it would serve no good purpose to enter upon a discussion of the same. The act of 1868 was exactly the law which we now have embodied in Chapter 14 of The Code, except that subdivision 7 of section 1 of that act, concerning the publication of the proceedings in Courts of Record, was amended by the act of 1871, there being added also in the act of 1871 a section concerning the debarring of attorneys of their license to practice law, and two further sections in the following words: "Section 2. That the several acts, neglects and omissions of duty, malfeasances misfeasances and nonfeasances specified and described in said act of April, 1869, as hereby amended, shall be and they are hereby declared to be the only acts, neglects and omissions of duty, malfeasances, misfeasances and nonfeasances which shall be subject of contempt of Court. Section 3. That if there be any parts of the common law now in force in this State which recognized other acts, neglects, omissions of duty, malfeasances, misfeasances or nonfeasances besides those specified and described in said act, the same are hereby repealed and annulled." The preamble to the act of 1871 refers indirectly, but clearly, to an opinion of this Court delivered by Chief Justice Pearson in the case of Ex Parte Moore, 62 N. *Page 487 
C., 397, in which it was said that there were other matters and acts which were the subjects of contempt at common law which were not embraced in the act of 1869, and the added sections above quoted were the admitted result of that opinion of the Court. This Court has repeatedly held that the act of 1871, limiting the power of the Courts to punish for contempt to the particular instances and acts embraced in the act of 1869 was not unconstitutional. Ex Parte Schenck, 65 N.C. 353; In re Oldham, 89 N.C. 23;Kane v. Haywood, 66 N.C. 1. In the last-mentioned case, the Court said, Chief Justice Pearson delivering the opinion: "The preamble (to the act of 1871) sets out that doubts have been expressed as to the construction of the act of 1869, by reason of which the judicial authority has asserted that other acts of contempt not specified in said act still exist at the common law, and the Courts have assumed to exercise jurisdiction over the same, and to impose other punishments therefor. The statute then goes on with a manifest intention to restrict the power of thejudiciary just as far as the Constitution permits the General Assembly todo (italics ours), and confines the neglects and omissions of duty, malfeasances, etc., to the specified particulars in the act of 1869, and for fear of evasion by the Courts, it is enacted. If there be any parts of the common law now in force in this State which recognize other acts, neglects, malfeasances, etc., etc., the same are hereby repealed and annulled.'" The facts in the case before us do not fall under the specifications of contempt in Chapter 14 of The Code, and the respondents are therefore not guilty of contempt. They would be but for the act of 1871, although not specified in The Code, for, but for that act, we would have no hesitancy in saying, as was said in Ex Parte Moore, that the act of 1869 did not embrace all the acts which, at common law, constituted contempt. But as we have said in the beginning of this opinion, this matter was *Page 488 
proceeded with in the Court below as for contempt, and particularly under subdivision 7 of section 654 of The Code, which is in these words: "All other cases where attachments and proceedings as for contempt have been heretofore adopted and practiced in courts of record of this State to enforce civil remedies, or protect the rights of any party to an action." That provision clearly applies to civil remedies, as was decided in the matter of In re Deaton, 105 N.C. 59. In the argument here our attention was called to section 656 of The Code, which is in these words: "To sustain a proceeding as for contempt, the act complained of must have been such as tended to defeat, impair, impede or prejudice the rights or remedies of a party to an action then pending in Court," and it was insisted that that section covered the facts in the case before the Court. But we think that that section must refer only to those specifications of acts which subject persons to punishment as for contempt set out in section 654 of The Code, and restricted instead of being matter of aider. But we think, from the facts found by his Honor, that the respondents Gorham and Ramsey unlawfully interferred with the proceedings of an action pending and being tried by him, and in doing so, violated the law as it is written in the last sentence of sub-section 3 of section 654 of The Code, and that for that offense the judgment and sentence pronounced upon them should be sustained. The whole of subsection 3 (prefaced by the opening words of section 654, "every Court of record shall have power to punish as for contempt"), reads as follows: "All persons for assuming to be officers, attorneys or counsellors of the Court, and acting as such without authority, for receiving any property or person which may be in custody of any officers by virtue of any order or process of the Court, for unlawfully detaining any witness or party to any suit, while going to, remaining at or returning from the Court where the same may be set for trial, or for the unlawful interference *Page 489 
with the proceedings in any action." The acts for which the respondents were found guilty were interferences with the proceedings in that action of the most unlawful and reprehensible kind. As to the juror Brown, the other respondent, the proceeding was also properly had as to him under subsection 5, section 654 of The Code, in which it is declared that punishment as for contempt may be awarded against "parties summoned as jurors for impropriety, conversing with parties or others in relation to an action to be tried at such Court, or receiving communications therefrom." The respondents were not entitled to a trial by jury, nor to have the findings of fact reviewed in this Court. There was evidence before his Honor to support the findings, and that is all that it required. In re Deaton,supra. Neither can their attempts to relieve themselves by avowals of lack of intention to bring the Court into contempt avail them. That rule — the disavowal of the imputed intent purges the contempt and relieves the respondent — applies only to that class of cases "where the intention
to injure constitutes the gravamen of the offense." Baker v. Cordon,86 N.C. 116.
Under the facts found, they can plead neither ignorance nor innocency. Upon a careful consideration of the whole case, we think the judgment must be
Affirmed.