IN RE GEORGE O. HEGE, EXECUTOR OF THE ESTATE OF EMMA A. STEVENSON, RESPONDENT.

(Filed 10 January, 1934.)

1. **Executors and Administrators G a—Clerk may force executor to file accounting under penalty of contempt.**

An executor is required to file an annual accounting of the decedent's estate, C. S., 105, with the right of the interested parties to file a suit in equity to surcharge and falsify the account, C. S., 135, or, upon a shortage in the estate, the executor may be prosecuted for embezzlement, C. S., 4268, and the clerk of the court can order the executor to file an annual accounting, and upon his wilful failure to do so, or his filing of an insufficient and unsatisfactory account, and his wilful refusal to file a full and satisfactory account within twenty days after the clerk's order to do so, he may be attached by the clerk for contempt, upon a proper showing, C. S., 106, and committed until he complies with the clerk's order, or the clerk may remove him.

2. **Contempt of Court B b—It is required that facts upon which judgment for contempt is based should be set forth.**

Where the clerk of the court attaches an executor for contempt for failure to file a satisfactory accounting as ordered, and in the accounting filed there are controverted matters as to whether the executor had overpaid some of the beneficiaries while underpaying others, and as to whether the executor was entitled to certain commissions, or whether the failure of the executor was a wilful violation of the clerk's order for him to file a full and sufficient account, it is required that the clerk set forth the evidence with his findings and conclusions, and upon his failure to have sufficiently done so his order of commitment for contempt will be remanded to him for that purpose.

3. **Contempt of Court A e—Contempt being criminal in its nature the relative statutes must be strictly construed.**

A proceeding for contempt of court is *sui generis*, and though criminal in its nature, may be resorted to in civil as well as criminal matters, and the order attaching the defendant for contempt must be based upon evidence set out in the proceedings, together with the court's findings of fact and conclusions of law, and where the alleged contempt is the failure to comply with an order of court, it is especially necessary that it be found that such failure was wilful and unlawful, C. S., 978(4), and the statute, being criminal in its nature, must be strictly construed.

APPEAL by respondent, George O. Hege, from *Sink, J.,* at June Term, 1933, of FORSYTH. Reversed and remanded.

The clerk of the Superior Court of Forsyth County, on 16 February, 1933, adjudged the respondent, George O. Hege, guilty of contempt and ordered him to be committed to the common jail of Forsyth County. The clerk in part rendered the following judgment: "In its discretion the court refused to accept the report tendered for the reason that it is not sufficient according to law, and the court finds as a fact that George

O. Hege, is in direct contempt of this court and adjudged the said George O. Hege, respondent, in direct contempt of court; and the court finds as a fact that he has wilfully disobeyed the orders of this court in refusing to file report in accordance with its orders and he still wilfully refuses to file report as executor of the estate of Emma A. Stevenson, deceased, as heretofore directed in an order of this court. It is, therefore, ordered and adjudged that George O. Hege be and he is hereby committed to the common jail of Forsyth County until he exhibits and files report as executor of the estate of Emma A. Stevenson, deceased, according to law and exhibits with said report vouchers and receipts as the law directs to support disbursements shown therein. This 16 February, 1933."

The record discloses that: "On 25 February, 1933, respondent was again brought before the clerk and Mr. P. N. Parrish (clerk's auditor), and minor corrections made after which respondent made out and tendered a new report in accordance with said auditor's report. Copies of said report were mailed to all interested parties by the clerk. After which R. C. Rights, Dora Rights, Louis Rights and Mary Lineback, filed protest against the clerk allowing commissions. A date was set for hearing on said protest and at said hearing no one appearing to substantiate said protest; the respondent moved to dismiss same and approve the report. Motion denied and respondent excepted."

The respondent sued out a writ of *habeas corpus* before Judge Sink, and among other findings before him is the following: "That the said Geo. O. Hege, executor of the estate of Emma A. Stevenson, deceased, was committed to the common jail of Forsyth County by W. E. Church, clerk of the Superior Court, upon an order and finding of facts, 16 February, 1933; that the said finding of facts are adopted by this court and found to be the facts pertaining to the said commitment by the clerk of the Superior Court and are made a part of this judgment. . . . (4) That upon the matter coming on to be heard the respondent filed an affidavit in the said cause (following and marked Exhibit A) a copy of which is attached hereto and made a part of this judgment. That in addition to the finding of facts by the clerk and the findings herein contained the court further finds as a fact that the said Geo. O. Hege did file with the clerk of the Superior Court a report purporting to be a final report as executor of the estate of Emma A. Stevenson, deceased, which report the court finds contained figures which were acceptable to the clerk of the Superior Court if and when settlement in accordance with the said figures is made; that the respondent admitted that he had not made settlement with the clerk of the Superior Court in accordance with terms of the figures contained in the report presented by him to the said clerk. It is, therefore, considered, ordered and ad-

IN RE HEGE.

judged, that Geo. O. Hege, be and is hereby remanded to the common jail of Forsyth County under the terms of the commitment of W. E. Church, clerk of the Superior Court, there to remain until he complies with the orders of the said clerk or is otherwise discharged according to law."

The record discloses that the respondent was dilatory for some period of time in making his return, after repeated notices by the clerk. The respondent contended "that he has overpaid seven heirs more than enough to finish paying the remaining three, and the inheritance tax." That the clerk refused to allow him commission, $804.63, although the estate was in litigation for two years and was benefited by same. That the clerk required him to be chargeable with certain interest which was incorrect, on inheritance tax amount to $106.28.

"Analysis of report referred to in paragraph 4 of Judge Sink's findings of facts, as compiled from said report and the report of auditor:

| | | |
|---|---:|---:|
| Total amount of assets | | $ 11,424.31 |
| Total collections | $ 13,797.77 | |
| Total disbursements | 6,214.22 | |
| | $ 7,583.55 | |

to be equally divided between ten heirs, which would be equal to $758.35 each.

Report shows that the estate was in litigation until 28 March, 1928.

The following distribution made to heirs between 1 December, 1925, and 28 September, 1928:

| | | Paid | Overpaid |
|---|---:|---:|---:|
| Annie Mock, due 1 share | $ 758.35 | $ 818.09 | $ 59.73 |
| Louis Rights, due 1 share | 758.36 | 813.00 | 54.64 |
| R. C. Rights, due 1 share | 758.36 | 818.09 | 59.73 |
| Will Rights, due 1 share | 758.36 | 818.09 | 59.73 |
| Mary Lineback, due 1 share | 758.36 | 793.09 | 34.73 |
| Agnes Rights, due 1 share | 758.36 | 817.89 | 59.57 |
| Dora Rights, due 1 share | 758.36 | 818.09 | 59.73 |
| | | | Unpaid |
| Arthur Jenkins, due 1 share | $ 758.36 | $ 700.00 | $ 58.36 |
| Lizzie Jenkins, due 1 share | 758.36 | 700.00 | 58.36 |
| Daisy Jenkins, due 1 share | 758.36 | 700.00 | 58.36 |

All of above paid to heirs prior to 1 January, 1929. Leaving due:

| | |
|---|---:|
| Inheritance tax | $ 272.46 |
| Clerk of court auditing and filing | 16.35 |

IN RE HEGE.

The following heirs joined in filing protest referred to in proceedings before the clerk: Annie Mock, R. C. Rights, Louis Rights, and Mary Lineback."

From the above report $7,583.60 was due the heirs, and they were overpaid $562.94. It will be noted that four of the heirs who were overpaid filed a protest, also that those heirs who filed protest against the clerk allowing commissions did not appear to substantiate the protest.

The record further shows an affidavit by respondent (Exhibit A referred to by Judge Sink) that in part says: "Deponent therefore disavows any intent to be in contempt of court or any of its officers, that he diligently and faithfully tried to the best of his ability to comply with not only all demands made by the clerk but any suggestions which the clerk would make, that he has not only in this instance but in all other instances acted with the utmost respect for the court and all of its officers and their authority and has not in the present case or any other case ever intended to either impede, delay or wilfully disobey the orders of the clerk or any officer of the court."

*George O. Hege in persona propria.*

CLARKSON, J. The record discloses that: "Copies of said report were mailed to all interested parties by the clerk. After which R. C. Rights, Dora Rights, Louis Rights and Mary Lineback, filed protest against the clerk allowing commissions. A date was set for hearing on said protest and at said hearing no one appearing to substantiate said protest; the respondent moved to dismiss same and approve the report. Motion denied and respondent excepted."

It appears from the record that there were several controverted questions arising on the final report. Copies of the report were mailed to all interested parties by the clerk. They took no action before the clerk. The interested parties had a right to file a bill in equity to surcharge and falsify the account or proceed under C. S., 135. *S. v. McCanless,* 193 N. C., 200. C. S., 48, requires an inventory within three months. The clerk, under C. S., 49, can compel an executor to file an inventory or remove him. C. S., 105, requires an annual accounting. C. S., 106, is as follows: "If any executor, administrator or collector omits to account, as directed in the preceding section, or renders an insufficient and unsatisfactory account, the clerk shall forthwith order such executor, administrator or collector to render a full and satisfactory account, as required by law, within twenty days after service of the order. Upon return of the order, duly served, if such executor, administrator or collector fail to appear or refuse to exhibit such account, the clerk may

IN RE HEGE.

issue an attachment against him for a contempt and commit him till he exhibit such account, and may likewise remove him from office." C. S., 109, provides for final account.

The record shows that the clerk was diligent and active in performing his duty under the above statutes. C. S., 110, provides that creditors may bring a special proceeding for accounting. C. S., 150—Representative must settle after two years. Public Laws, 1933, chap. 188, amends this section giving clerk authority to extend final settlement of estates for five years with approval of judge. C. S., 152, provides that after final account representative may petition for settlement. C. S., 157, commissions allowed representatives. *Bank v. Bank,* 126 N. C., 531; *Kelly v. Odum,* 139 N. C., 278; *Thigpen v. Trust Co.,* 203 N. C., 291. C. S., 4268, is as follows: "If any person exercising a public trust or holding a public office, or any guardian, administrator, executor, trustee, or any officer or agent of a corporation, or any agent, consignee, clerk or servant, except persons under the age of sixteen years, of any person, shall embezzle or fraudulently or knowingly and wilfully misapply or convert to his own use, or shall take, make way with or secrete, with intent to embezzle or fraudulently or knowingly and wilfully misapply or convert to his own use any money, goods or other chattels, bank notes, checks or order for the payment of money issued by or drawn on any bank or other corporation or any treasury warrant, treasury note, bond or obligation for the payment of money issued by the United States or by any State, or any other valuable security whatsoever belonging to any other person or corporation, which shall have come into his possession or under his care, he shall be guilty of a felony, and shall be punished as in case of larceny."

The law as above set forth is ample and plenary to protect estates from the ravages of unjust stewards. Under certain circumstances they can be punished for contempt and indicted for embezzlement. It is important that the clerks should hold these fiduciaries to a strict accountability and the clerk of Forsyth County is to be commended for a compliance with the statute. While this is so, the individual is entitled to a just accounting. These disputed matters, like commissions, interest, overpayments, etc., claimed by the executor, respondent in this controversy, should be carefully gone into and considered. Testimony should be heard on each contested item and the facts carefully set out and found, and the clerk on the facts found should declare the law. The executor, as in this case, can except to the findings of fact and conclusions of law and appeal to the Superior Court.

In Mordecai's Law Lectures, Vol. 2 (2d ed.), p. 1339-40, speaking to the subject: "These *ex parte* accounts filed and audited are not conclusive and an estoppel on either the personal representative who files

them, or on the legatees and next of kin. But such an account is prima facie correct and places the burden of proof on him who alleges the contrary. Should the personal representative and beneficiaries of the estate enter into a controversy over the accounts before the clerk, and the clerk state the account in such controversy, it may be, and probably is, the law, that the account so stated would be binding and an estoppel on those participating in such controversy. In such a controversy either party, I take it, could appeal to the judge in term or out of term." *Ex Parte Spencer,* 95 N. C., 271; *Bean v. Bean,* 135 N. C., 92; *Marler v. Golden,* 172 N. C., 823. C. S., 637.

Now we come to consider the question of contempt. C. S., 978: "Any person guilty of any of the following acts may be punished for contempt: (subsec. 4) Wilful disobedience of any process or order lawfully issued by any court."

A contempt proceeding is *sui generis.* It is criminal in its nature, and that the party is charged with doing something forbidden, and, if found guilty is punished. Yet it may be resorted to in civil or criminal action. *In the Matter of Lewis,* 202 U. S., 514, 50 L. Ed., 1172. In contempt proceedings the facts upon which the contempt is based must be found and filed, especially the facts concerning the purpose and object of the contemnor, and the judgment must be founded on these findings. *In re Odum,* 133 N. C., 250; *West v. West,* 199 N. C., 12.

Contempt proceedings is criminal in its nature, and must be construed strictly.

In *S. v. Banks,* 143 N. C., 657, we find: "The word 'wilful,' when used in a statute creating an offense, implies the doing of the act purposely and deliberately in violation of law." In *S. v. Falkner,* 182 N. C., p. 798, it is said: "The term *unlawfully* implies that an act is done, or not done as the law allows, or requires; while the term *wilfully* implies that the act is done knowingly and of stubborn purpose." *West v. West, supra,* p. 15.

We think that evidence should be taken by the clerk on all the disputed matters and a complete statement of the account made up by him and his conclusion of law found thereon. From the present state of the record, we cannot hold that there was a wilful disobedience of any process or order lawfully issued by the clerk. For the reasons given, the cause is

Reversed and remanded.