BLUE JEANS CORPORATION AND WHITEVILLE MANUFACTURING COMPANY v. AMALGAMATED CLOTHING WORKERS OF AMERICA, AFL-CIO, AND CHARLES ENGLISH, EDDIE GEE, JAMES DUNCAN, BILL WILLIAMS, EULA McGILL, VERA WARD, MACY KING, FRANK TYLER, ROGER STEVENS. MAXINE KELLIHAN, HAZEL LARAY GIBSON, RUBY FISHER, MILDRED NYE, BETTY JO HAYES, GLENDORA TANNER, ELIZABETH WELLS, HUBBARD WELLS, KATHLEEN MINCEY, EARLIE WARD, LEONA WARD, VERA JONES, RHOLETTA FAIRCLOTH, RUBY McPHERSON, LEONA SELLERS, JAXIE WILLIAMSON, HILDA POPE, JAMES H. MARTIN, SOLOMON TOON, JO ANN CUNNINGHAM, VAUGHN CHERRY, EMLLOUISE STEELE, QUEEN ESTHER BELLAMY, MARVA BEARD, GERALDINE KELLY, QUEEN ESTHER WEBB, FRED LYONS (ISHMEL) JERRY MARTIN, BLANCHIE FRINK, HATTIE D. McKENZIE, JOYCE FOXWORTH, DANIEL GODWIN, ROSCOE SHAW, JR., AND JOHN BRYANT

No. 5

(Filed 15 October 1969)

**1. Contempt of Court § 6; Constitutional Law § 29— right to jury trial — criminal contempt proceeding — unlawful picketing**

In criminal contempt proceedings against striking workers for the willful violation of a restraining order against unlawful picketing, defendants are not entitled to a trial by jury, since criminal contempt is a petty offense and the constitutional right to trial by jury does not extend to petty offenses. G.S. 5-4; U. S. Constitution Art. III, § 2; N. C. Constitution, Art I, § 13.

**2. Contempt of Court §§ 3, 7— willful disobedience of court order — punishment**

Willful disobedience of an order lawfully issued by the court is contemptuous conduct and is punishable by fine not to exceed $250 or im-

prisonment not to exceed 30 days, or both, in the discretion of the court. G.S. 5-1(4), G.S. 5-4.

**3. Contempt of Court § 8— appeal and review**

Contemnors are entitled to appeal from a judgment finding them guilty of contempt not committed in the presence of the court. G.S. 5-2.

**4. Contempt of Court §§ 2, 3— civil and criminal contempt — distinctions**

A proceeding for contempt under G.S. 5-1 and a proceeding as for contempt under G.S. 5-8 are distinct, the first relating to acts or omissions having a direct tendency to interrupt the proceedings of the court or to impair the respect due its authority, and the latter to acts or neglects tending to defeat, impair, impede or prejudice the rights or remedies of a party to an action pending in the court, the distinction being important because of differences in procedure, punishment and the right of review.

**5. Contempt of Court § 3— criminal nature of contempt proceedings**

The fact that contemptuous conduct arises in a civil action does not alter the fact that contempt proceedings are criminal in nature.

**6. Contempt of Court §§ 2, 3— nature of contempt proceedings**

A contempt proceeding is *sui generis*, criminal in its nature, and may be resorted to in civil or criminal actions.

**7. Contempt of Court § 2— criminal contempt — picketing activities — accomplished acts**

The accomplished acts of striking workers in willfully violating a court order restraining them from engaging in unlawful picketing activities against their employer, which acts tended to impair the respect due the authority of the court and to interfere with the administration of justice, are punishable as criminal contempt.

**8. Contempt of Court § 5— unlawful picketing activities — procedure for indirect contempt**

In contempt proceeding against striking workers for the violation of restraining order against unlawful picketing, the court properly followed procedure for indirect contempt, G.S. 5-7, since the contemptuous acts were committed outside the actual or constructive presence of the court.

**9. Criminal Law § 4— "serious offense" defined**

A serious offense is one for which the authorized punishment exceeds six months' imprisonment and a $500 fine.

**10. Constitutional Law § 29— right to jury trial — petty offense**

There is no constitutional right to a jury trial for a petty offense in either federal or state courts. U. S. Constitution, Art. III, § 2.

**11. Constitutional Law § 29; Contempt of Court § 6— trial by jury — criminal contempt — punishment — side effects**

The possibilities that striking workers adjudged guilty of criminal contempt under G.S. 5-1 might be denied the right to return to work or might

be disqualified from drawing unemployment benefits for as long as twelve weeks *are held* irrelevant on the issue of whether the strikers are entitled to trial by jury in the contempt proceedings, since the possibilities are no part of the punishment which the court may impose for criminal contempt. G.S. 5-4.

BOBBITT, J., dissenting.

SHARP, J., joins in dissenting opinion.

APPEAL by defendants Maxine Kellihan, Frank Tyler, and James Martin from decision of the Court of Appeals upholding judgment of *Clark, J.,* at the 3 August 1968 Session, COLUMBUS County Superior Court.

This is a civil action instituted on 1 April 1968 to restrain the Amalgamated Clothing Workers of America, AFL-CIO, and other individually named defendants from committing certain allegedly unlawful acts arising out of a strike against the Blue Jeans Corporation and Whiteville Manufacturing Company. On 1 April 1968 Judge Clark signed a temporary restraining order containing, among other things, the following provision: "No person or persons shall interfere, in any manner whatever, with the free ingress or egress, of any individual whomsoever, to and from the plaintiffs' aforesaid plant and premises. No person or persons shall at any time or at any place assault or threaten to assault or injure or threaten to injure the persons or property or family of any individual or use any abusive, insulting or threatening language toward any individual, because of such individual's working, seeking to work, for the plaintiffs or doing business, or seeking to do business with the plaintiff." This order was returnable before Judge Clark at the courthouse in Whiteville at 10 a.m. on 20 April 1968 where defendants were directed to appear and show cause why the order should not be continued in force until the merits of the cause had been determined.

On 20 April 1968 defendants through counsel moved to continue the hearing until out-of-state attorneys representing defendants could be present, which motion was granted and the hearing set for 23 April 1968 at 2:30 p.m. At the hearing on that date the court found that on 11 April 1968 defendants Vaughn Cherry and James Martin had willfully violated that portion of the restraining order above quoted and imposed a fine of $25.00 as to each of said defendants. No appeal was taken from that finding and judgment. The restraining order was continued in full force and effect.

On 13 July 1968 Maxine Kellihan, Frank Tyler, James Martin and certain other defendants were cited by Judge Clark to appear

before him and show cause why they should not be adjudged in contempt for willful violation of the restraining order. Pursuant to this citation a hearing was held on 3 August 1968, and counsel for those who had been cited to appear moved in apt time for a jury trial. The motion was denied and exception duly taken. After hearing the evidence offered by both sides the court discharged four individuals who had been cited to appear and continued the hearing as to others. With respect to James Martin, Frank Tyler and Maxine Kellihan the court found that each had been served with a copy of the original restraining order and had been present in court at previous hearings; that while engaged in picketing the Blue Jeans plant on July 8 said defendants had used loud, boisterous and insulting language to persons lawfully using the driveways of the Blue Jeans plant and directed such language at said persons in a willful attempt to intimidate and harrass or insult employees and other persons doing business with Blue Jeans Corporation; that on the same date these three defendants were impeding the vehicles using the driveways of said plant and were attempting to impede their lawful and orderly ingress or egress; that James Martin while so engaged used vulgar and indecent language in a loud and boisterous voice clearly audible to persons in the immediate vicinity. Based upon the findings of fact recited in its order, the court adjudged Maxine Kellihan, Frank Tyler and James Martin in contempt and fined Kellihan and Tyler $10.00 each. James Martin was sentenced to the Columbus County Jail for a period of five days and restrained from engaging in any further picketing activities of the Blue Jeans plant.

From the judgment pronounced defendants Maxine Kellihan, Frank Tyler and James Martin appealed to the Court of Appeals. The order of Judge Clark was affirmed by decision of that court appearing in 4 N.C. App. 245, 166 S.E. 2d 698. Said defendants thereupon appealed to the Supreme Court alleging involvement of a substantial constitutional question, to wit, denial of the right to trial by jury.

*Rountree & Clark by John Richard Newton, Attorneys for defendant appellants.*

*Powell, Lee and Lee by J. B. Lee, Attorneys for plaintiff appellees.*

HUSKINS, J.

The Constitution of North Carolina, Article I, Section 13, reads as follows: "No person shall be convicted of any crime but by the

unanimous verdict of a jury of good and lawful persons in open court. The Legislature may, however, provide other means of trial, for petty misdemeanors, with the right of appeal."

The Constitution of the United States, Article III, Section 2, reads in pertinent part as follows: "The trial of all cases, except in cases of impeachment, shall be by jury. . . ." The Sixth Amendment thereto provides, *inter alia,* that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury. . . ."

[1] Were appealing defendants in this contempt proceeding entitled to a jury trial under the foregoing provisions of the State and Federal Constitutions? That is the only question presented by this appeal.

[2, 3] Maxine Kellihan, Frank Tyler and James Martin have been adjudged guilty of willful disobedience of an order lawfully issued by the court. This is contemptuous conduct. G.S. 5-1, subsection 4; *Nobles v. Roberson,* 212 N.C. 334, 193 S.E. 420; *Elder v. Barnes,* 219 N.C. 411, 14 S.E. 2d 249. Such conduct is punishable by "fine not to exceed two hundred and fifty dollars, or imprisonment not to exceed thirty days, or both, in the discretiton of the court." G.S. 5-4. The right of review on appeal is afforded by G.S. 5-2 since the contempt was not committed in the presence of the court.

[4] "A person guilty of any of the acts or omissions enumerated in the eight subsections of G.S. 5-1 may be punished for contempt because such acts or omissions have a direct tendency to interrupt the proceedings of the court or to impair the respect due to its authority. A person guilty of any of the acts or neglects catalogued in the seven subdivisions of G.S. 5-8 is punishable as for contempt because such acts or neglects tend to defeat, impair, impede, or prejudice the rights or remedies of a party to an action pending in court.

"It is essential to the due administration of justice in this field of the law that the fundamental distinction between a proceeding for contempt under G.S. 5-1 and a proceeding as for contempt under G.S. 5-8 be recognized and enforced. The importance of the distinction lies in differences in the procedure, the punishment, and the right of review established by law for the two proceedings." *Luther v. Luther,* 234 N.C. 429, 67 S.E. 2d 345.

The line of demarcation between civil and criminal contempts is hazy at best. "A major factor in determining whether a contempt

is civil or criminal is the purpose for which the power is exercised. Where the primary purpose is to preserve the court's authority and to punish for disobedience of its orders, the contempt is criminal. Where the primary purpose is to provide a remedy for an injured suitor and to coerce compliance with an order, the contempt is civil. . . . Civil contempt proceedings look only to the future." 17 Am. Jur. 2d, Contempt § 4.

In *Rose's Stores v. Tarrytown Center*, 270 N.C. 206, 154 S.E. 2d 313, there was a violation of a temporary restraining order in a civil action. There, as here, defendants were cited to show cause why they should not be held in contempt for violating the temporary order. The court said: "Criminal contempt or punishment *for contempt* is applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice. Civil contempt or punishment *as for contempt* is applied to a continuing act," and the proceeding is used to compel obedience to orders and decrees made for the benefit of private parties and to preserve and enforce private rights.

[5]    While some jurisdictions hold that a criminal contempt proceeding is independent and not a part of the case out of which the alleged contempt arose (*Berlandi v. Commonwealth*, 314 Mass. 424, 50 N.E. 2d 210), there is authority that a contempt proceeding based on the violation of an injunction, regardless of whether the proceeding is civil or criminal in nature, is a part of the original injunction suit and properly triable as such (*Frey v. Willey*, 161 Kan. 196, 166 P. 2d 659). "Although contempt of court, in its essential character, is divided into various kinds, such as direct or constructive, and civil or criminal, nevertheless in every species of contempt . . . there is said to be necessarily inherent an element of offense against the majesty of the law savoring more or less of criminality. Therefore it is said that the process by which the party charged is reached and tried . . . is essentially criminal or quasi-criminal." 17 Am. Jur. 2d, Contempt § 78; *Jenkins v. State*, 242 Miss. 627, 136 So. 2d 205. The fact that contemptuous conduct arises in a civil action does not alter the fact that contempt proceedings are criminal in nature. *Gompers v. Bucks Stove and Range Co.*, 221 U.S. 418, 55 L. ed 797, 31 S. Ct. 492.

[6]    In this State a contempt proceeding has been described as *sui generis*, criminal in its nature, which may be resorted to in civil or criminal actions. *In Re Hege*, 205 N.C. 625, 172 S.E. 345; *Manufacturing Co. v. Arnold*, 228 N.C. 375, 45 S.E. 2d 577; accord, *Blackmer v. United States*, 284 U.S. 421, 76 L. ed 375, 52 S. Ct. 252.

**[7, 8]** Here, appellants were punished for acts already accomplished which tended to impair the respect due the authority of the court and interfere with the administration of justice. Hence, they were properly charged with and punished for criminal contempt. *Dyer v. Dyer*, 213 N.C. 634, 197 S.E. 157. The procedure prescribed for indirect contempt was followed — and properly so since the contemptuous acts were not committed in the actual or constructive presence of the court. G.S. 5-7; *Galyon v. Stutts*, 241 N.C. 120, 84 S.E. 2d 822.

We now examine the validity of the contention that appellants are entitled to a jury trial in a criminal contempt proceeding.

It is said in *State v. Yancy*, 4 N.C. 133, that punishment for contempt is "the exercise of a power incident to all courts of record, and essential to the administration of the laws. The punishment, in such cases, must be immediate, or it would be ineffectual, as it is designed to suppress an outrage which impedes the business of the court."

In *Baker v. Cordon*, 86 N.C. 116, defendant was charged with violating an injunction in a civil action. He was cited to show cause why he should not be attached for contempt in disobeying the order. Defendant contended he was entitled to a jury trial. Held: "The proceeding by attachment for violating an order of the Court made in furtherance of a pending action is necessarily summary and prompt, and to be effectual it must be so. The Judge determines the facts and adjudges the contempt, and while he may avail himself of a jury and have their verdict upon a disputed and doubtful matter of fact, it is in his discretion to do so or not." This legal principle has been approved in many decisions of this Court, including *In Re Deaton*, 105 N.C. 59, 11 S.E. 244; *In Re Gorham*, 129 N.C. 481, 40 S.E. 311; *Manufacturing Co. v. Arnold, supra* (228 N.C. 375, 45 S.E. 2d 577); and it is in accord with the weight of authority in the United States. The general rule for more than 150 years has been that a constitutional guaranty of jury trial does not apply to proceedings for contempt of court. 31 Am. Jur., Jury, § 38; *Bessette v. W. B. Conkey Co.*, 194 U.S. 324, 48 L. ed 997, 24 S. Ct. 665; *In Re Debs*, 158 U.S. 564, 39 L. ed 1092, 15 S. Ct. 900; *Gompers v. United States*, 233 U.S. 604, 58 L. ed 1115, 34 S. Ct. 693; *Green v. United States*, 356 U.S. 165, 2 L. ed 2d 672, 78 S. Ct. 632; *United States v. Barnett*, 376 U.S. 681, 12 L. ed 2d 23, 84 S. Ct. 984; *Neel v. State*, 9 Ark. 259; *Blodgett v. Superior Court*, 210 Cal. 1, 290 P. 293, 72 A.L.R. 482; *O'Brien v. People*, 216 Ill. 354, 75 N.E. 108; *State v. Shumaker*, 200 Ind. 716, 164 N.E. 408; *Flannagan v. Jepson*, 177 Iowa 393, 158

N.W. 641; *Root v. MacDonald,* 260 Mass. 344, 157 N.E. 684, 54 A.L.R. 1422; *Osborne v. Purdome,* (Mo.) 244 S.W. 2d 1005, 29 A.L.R. 2d 1141, cert. den. 343 U.S. 953, 96 L. ed 1354, 72 S. Ct. 1046, reh. den. 343 U.S. 988, 96 L. ed 1375, 72 S. Ct. 1072; *State ex rel Stewart v. District Ct.,* 77 Mont. 361, 251 P. 137, 49 A.L.R. 627; *Carter v. Commonwealth,* 96 Va. 791, 32 S.E. 780; *State v. Fredlock,* 52 W.Va. 232, 43 S.E. 153.

Historically speaking, there was no constitutional right of trial by jury in a criminal contempt case prior to 1968. "It has always been the law of the land, both state and federal, that the courts — except where specifically precluded by statute — have the power to proceed summarily in contempt matters." *United States v. Barnett, supra* (376 U.S. 681, 12 L. ed 2d 23, 84 S. Ct. 984). The claim that those charged with criminal contempt have a constitutional right to a jury trial was rejected by the United States Supreme Court in more than fifty cases — from *United States v. Hudson and Goodwin,* 7 Cranch 32, 3 L. ed 259, in 1812 to *United States v. Barnett, supra,* in 1964.

Finally, however, in *Bloom v. Illinois,* 391 U.S. 194, 20 L. ed 2d 522, 88 S. Ct. 1477 (1968), those precedents embodying the judicial wisdom of eminent jurists for 156 years were overruled with respect to *serious* contempts, i.e., contempts for which the authorized punishment exceeds imprisonment for six months or a $500 fine. Bloom was charged with criminal contempt for which Illinois law provided no maximum punishment. Request for a jury trial was denied; defendant was found guilty and sentenced to prison for twenty-four months. The Supreme Court of Illinois affirmed, and on certiorari the Supreme Court of the United States reversed, holding (1) that criminal contempt is a crime in the ordinary sense — a public wrong punishable by fine or imprisonment or both, and (2) that serious contempts are so nearly like other serious crimes that they are subject to the jury trial provisions of Article III, Section 2 of the Federal Constitution, and of the Sixth Amendment thereto, which is binding upon the states by virtue of the Due Process Clause of the Fourteenth Amendment.

The same day *Bloom* was decided (May 20, 1968), the United States Supreme Court rendered its decision in *Duncan v. Louisiana,* 391 U.S. 145, 20 L. ed 2d 491, 88 S. Ct. 1444, wherein defendant was charged with simple battery, a misdemeanor punishable by a fine of not more than $300 or imprisonment of not more than two years, or both. Demand for a jury trial was denied. Upon conviction defendant was sentenced to sixty days in jail and fined $150.

The Supreme Court of Louisiana denied review, and on appeal the United States Supreme Court reversed, holding that a crime punishable by two years in prison is a serious crime — not a petty offense — and thus requires a trial by jury.

In *Cheff v. Schnackenberg*, 384 U.S. 373, 16 L. ed 2d 629, 86 S. Ct. 1523 (1966), defendant was sentenced to prison for six months for violating an order of the court. The Supreme Court of the United States affirmed, holding the contempt proceedings equivalent to a prosecution for a petty offense and that the right of trial by jury in criminal cases secured by Article III, Section 2 of the Federal Constitution, and by the Sixth Amendment thereto, does not extend to petty offenses.

[9, 10]    *Bloom, Duncan* and *Cheff* were the basis for decision by this Court in *State v. Morris*, 275 N.C. 50, 165 S.E. 2d 245 (1966), wherein we held that "a serious offense is one for which the authorized punishment exceeds six months' imprisonment and a $500 fine." Thus, if the authorized maximum punishment is within that limit, or if no maximum penalty is provided by law and the penalty actually imposed is within that limit, the offense is petty and there is no constitutional right to a jury trial in either federal or state courts. It was so held in *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 20 L. ed 2d 538, 88 S. Ct. 1472 (1968).

[1]    Here, the maximum punishment authorized by G.S. 5-4 for criminal contempt is a fine of $250 or imprisonment for thirty days, or both. This makes it a petty offense with no constitutional right to a jury trial. *State v. Morris, supra.*

[11]    Defendants say, however, that in addition to the maximum punishment authorized by G.S. 5-4, holding them in contempt visits additional punishment upon them in that (1) Blue Jeans Corporation may deny them the right to return to work when the strike ends (*National Labor Relations Board v. Thayer Co.*, 213 F. 2d 748); and (2) they are disqualified from drawing unemployment benefits for as long as twelve weeks "if it is determined by the Commission [Employment Security Commission] that such an individual is, at the time such claim is filed, unemployed because he was discharged for misconduct connected with his work. . . ." G.S. 96-14(2); *In Re Stutts*, 245 N.C. 405, 95 S.E. 2d 919. These contingencies, however, are not part of the punishment which the trial court is authorized to impose for criminal contempt. Rather, they are possible side effects that may or may not materialize. They are totally irrelevant here. The only *punishment* prescribed by law for the contempts enumerated in G.S. 5-1 is a fine not to exceed $250 or

imprisonment not to exceed thirty days, or both, as authorized by G.S. 5-4.

The decision of the Court of Appeals affirming the order which denied appellants a jury trial is

Affirmed.

BOBBITT, J., dissenting:

Appellants were tried at August 3, 1968 Session of Columbus Superior Court for their alleged contemptuous violation on July 8, 1968 of the specific provisions of a restraining order.

The alleged contempt was not committed in the presence of the court. There was no disruption of or interference with any court session or proceeding. Nor does the alleged contempt involve continuous or repetitive conduct in violation of the court's order. The hearing was to determine whether appellants were guilty of terminated past conduct constituting a wilful violation of the court's order; and, if so, what punishment should be imposed. The appeal presents this question: Did the court err in refusing appellants' request for a jury trial as to whether in fact appellants were guilty of the conduct alleged to constitute a wilful violation of the court's order?

I accept with full approval the decisions of the Supreme Court of the United States in *Duncan* (391 U.S. 145) and in *Bloom* (391 U.S. 194). However, these decisions do not apply to criminal prosecutions or to criminal contempt proceedings in State courts involving "petty offenses" which, as defined in the federal statute and decisions, are offenses punishable by a maximum fine of five hundred dollars or by a maximum prison sentence of six months or both. Since Chapter CLXXVII, Public Laws 1868-9, now codified as N.C. G.S. 5-4, provides that criminal contempt is punishable "by fine not to exceed two hundred and fifty dollars, or by imprisonment not to exceed thirty days, or both, in the discretion of the court," decision herein is not affected by *Duncan* and *Bloom*.

In *Bloom*, Mr. Justice White stated: "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." He quotes with approval this excerpt from the opinion of Mr. Justice Holmes in *Gompers v. United States*, 233 U.S. 604, 610, 58 L. ed. 1115, 1120, 34 S. Ct. 693, 695, *viz:* "These contempts are infractions of the law, visited with punishment as such. If such acts are not

criminal, we are in error as to the most fundamental characteristic of· crimes as that word has been understood in English speech." The majority hold the present proceeding is for criminal contempt. I agree.

In prior decisions, this Court has held whether an accused person has committed acts alleged to constitute wilful contempt of a court order is determinable by the court rather than by a jury. The right to a jury trial has been denied without reference to whether the alleged contempt was committed in the presence of the court or disrupted court sessions or proceedings or otherwise disturbed the conduct of the court's business. In respect of an accused person's right to a jury trial, no distinction has been drawn between contemptuous conduct in the presence of the court and alleged contemptuous conduct occurring beyond the presence and observation of the court.

The contemptuous conduct involved in *State v. Yancy*, 4 N.C. 133, consisted of an assault "committed in view of the court." With reference to this factual situation, Taylor, C.J., said: "The punishment, in such cases, must be immediate, or it would be ineffectual, as it is designed to suppress an outrage which impedes the business of the court."

Contemptuous conduct involved in *State v. Woodfin*, 27 N.C. 199, consisted of "fighting in the yard of the courthouse, before. the courthouse door, and in the presence of the court." With reference to this factual situation, Ruffin, C.J., said: "The power to commit or fine for contempt is essential to the existence of every court. Business cannot be conducted unless the court can suppress disturbances, and the only means of doing that is by immediate punishment. A breach of the peace *in facie curiæ* is a direct disturbance and a palpable contempt of the authority of the court. It is a case that does not admit of delay, and the court would be without dignity that did not punish it promptly and without trial."

The contemptuous conduct involved in *Baker v. Cordon*, 86 N.C. 116, consisted of the continuing violation by the defendant of a court order which restrained him from engaging in a competitive business in violation of his covenant obligation. No interference with or disturbance of any business of the court was involved. The court's factual determinations were based on evidence rather than upon observation. Upon the court's factual findings, the defendant was adjudged in contempt for violation of the court's order and sentenced to imprisonment for ten days. This Court, holding untenable the defendant's contention that he was entitled to a jury trial as to the controverted facts, found "No error."

In *Baker v. Cordon, supra,* Smith, C.J., for the Court, said: "The proceeding by attachment for violating an order of the Court made in furtherance of a pending action is necessarily summary and prompt, and to be effectual it must be so. The Judge determines the facts and adjudges the contempt, and while he may avail himself of a jury and have their verdict upon a disputed and doubtful matter of fact, it is in his discretion to do so or not. *State v. Yancey,* 4 N.C. 133; *State v. Woodfin,* 27 N.C. 199; *Moye v. Cogdell,* 66 N.C. 403; *Crow v. State,* 24 Texas 12."

The factual situations in *Yancy* and in *Woodfin* are set forth above. Contempt proceedings were not involved in *Moye v. Cogdell,* 66 N.C. 403.

In subsequent contempt cases in which there was no interference with or disturbance of the court and in which the factual determinations were made on the basis of evidence rather than observation, the opinions repeat in substance the statement in *Baker v. Cordon, supra,* that "(t)he Judge determines the facts and adjudges the contempt." *In re Deaton,* 105 N.C. 59, 11 S.E. 244; *In re Gorham,* 129 N.C. 481, 40 S.E. 311; *Manufacturing Co. v. Arnold,* 228 N.C. 375, 45 S.E. 2d 577. Whether the alleged contemners were entitled to a jury trial was not raised on the appeals in *Deaton, Gorham* and *Arnold.* In *Deaton,* the opinion cites *Baker v. Cordon, supra,* and quotes the portion of the opinion set forth above. In *Gorham,* the opinion cites *Baker* and *Deaton.* In *Arnold,* the opinion cites *Gorham.* In *Baker,* primary reliance was placed upon *Yancy* and *Woodfin,* which involved contempts in the presence of the court and then and there directly interfering with the conduct of its business. The only reasons assigned as a basis for the rule are those set forth in the *Yancy, Woodfin* and *Baker* cases. Obviously, these reasons do not apply to the factual situation here considered.

The real question for decision is whether appellants were entitled to a jury trial as a matter of right under the provisions of Article I, Section 13, of the Constitution of North Carolina, which provides: "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful persons in open court. The Legislature may, however, provide other means of trial, for petty misdemeanors, with the right of appeal."

Although this constitutional provision, on which appellants' principal contention is based, is quoted in the first paragraph of the majority opinion, there is no further reference thereto or discussion thereof. Nor do I find any prior decision involving contempt proceedings in which this provision of the North Carolina Constitution

is considered with relation to a person's right to jury trial when charged with criminal contempt. Hence, the question would seem to be open for consideration at this time.

Under Article I, Section 13, the General Assembly may provide "other means of trial, for petty misdemeanors, *with the right of appeal.*" (My italics.) Referring to this portion of Article I, Section 13, Merrimon, J. (later C.J.), in *State v. Crook*, 91 N.C. 536, 539-540, said: "This plainly implies that, 'as to petty misdemeanors,' a method of trial other than by jury in the ordinary methods may be provided by the legislature, if the right of appeal be allowed — that is, the right to appeal to a court where trial by jury may be had." In *State v. Pulliam*, 184 N.C. 681, 114 S.E. 394, Walker, J., for the Court, said: "The offense here, of course, is a petty misdemeanor, but this Court has held that the expression used in the Constitution 'with right of appeal' confers upon the defendant, when the appeal is taken, the right of trial by jury in the Superior Court. . . ."

"Petty misdemeanors," within the meaning of Article I, Section 13, *include* offenses for which (as for criminal contempt) the punishment may not exceed a fine of two hundred and fifty dollars or imprisonment for thirty days or both. *State v. Lytle*, 138 N.C. 738, 51 S.E. 66; *State v. Hyman*, 164 N.C. 411, 79 S.E. 284. In *Lytle*, Clark C.J., said: "The object of the statute creating the police court is to relieve the Superior Courts of petty business, to relieve the taxpayers, and defendants, also, of heavy costs, and to give a speedy trial, lightening jail expenses, and dispensing often with long imprisonment or detention till a term of court comes around with its jury and judge. There is no harm done, since an appeal always lies open to a convicted defendant to the Superior Court, where he has the right of trial by jury; whereas to the acquitted defendant or to one who takes no exception to his punishment, there is a relief from unnecessary delay and costs as well as diminution of court expenses to the public."

In *State v. Pasley*, 180 N.C. 695, 104 S.E. 533, the defendant was charged in a criminal action before a justice of the peace with going or entering upon the lands of another, without a license therefor, after having been forbidden to do so, a violation of the statute now codified as G.S. 14-134, a criminal offense then punishable by a fine not exceeding fifty dollars or by imprisonment not exceeding thirty days. The defendant was found guilty by the justice of the peace who entered judgment taxing the defendant with the costs. The defendant appealed. In the superior court, the parties negotiated for a settlement of the controversy. However, final agreement

was not reached on account of the defendant's refusal to pay the costs. Thereupon the court, against the consent of the defendant and without allowing the defendant a jury trial, affirmed the judgment of the justice of the peace as to the costs. This Court set the judgment aside and ordered "a new trial by jury." Walker, J., for the Court, said: "Article I, section 13, of the Constitution says: 'With right of appeal.' And this Court has held in the case of *S. v. Brittain*, 143 N.C. 668, that when a defendant asserts his right of appeal, and the case comes up in the Superior Court, the defendant's right of trial by jury, as guaranteed by the Constitution, is preserved to him. It makes no difference what the real issue is, so that the charge involves the commission of a crime for which he can be punished and made to pay the costs." Accord: *State v. Pulliam, supra.*

Our decisions establish that Article I, Section 13, confers upon every person accused of having committed a criminal offense, even though it be a petty misdemeanor, the right to trial by jury either in the inferior court (*State v. Ham*, 83 N.C. 590) or in the superior court upon original trial or trial *de novo* upon defendant's appeal from an inferior court. *State v. Tate*, 169 N.C. 373, 85 S.E. 383; *State v. Thomas*, 236 N.C. 454, 460, 73 S.E. 2d 283, 287; *State v. Norman*, 237 N.C. 205, 212, 74 S.E. 2d 602, 608. I perceive no reason why a person accused of terminated past conduct (neither in the presence of the court nor interfering with the functioning of the court) constituting criminal contempt is not equally entitled to the right of trial by jury. Where guilt for past conduct and punishment therefor are involved, I find no sound basis for applying different rules simply because guilt is related to the violation of a court order rather than to the violation of a State statute or municipal ordinance. Hence, I reach the conclusion that appellants were entitled to a trial by jury in respect of all controverted material facts relating to their alleged guilt of criminal contempt.

The views herein expressed are in substantial accord with those stated by Sheran, J., for the Supreme Court of Minnesota, in *Peterson v. Peterson*, 153 N.W. 2d 825 (1967).

SHARP, J., joins in dissenting opinion.