In the matter of W. P. OLDHAM.

## Contempt—Legislative Act.

1. Where the respondent is held to answer for an alleged attempt to corruptly influence the administration of justice (but not in the presence of or during the sitting of the court) by giving hand-bills to a juror summoned to serve at a term when the case in which he was interested stood for trial, with a request to read the same and hand them to the others, said hand-bills containing an account of the causes of the suit prejudicial to the adverse party; *Held*, that he is not guilty of contempt. The statute confines such offence to acts specified therein.

2. The constitutional provision, to the effect that the general assembly cannot deprive the judicial department of any power which rightly pertains to it, is not infringed by the legislature in specifying what acts shall constitute a contempt.

(*Ex-parte Schenck*, 65 N. C., 366; *Pain* v. *Pain*, 80 N. C., 322; *Kane* v. *Haywood*, 66 N. C., 1, cited and approved).

PROCEEDING in contempt heard at Fall Term, 1882, of NEW HANOVER Superior Court, before *MacRae, J.* ·

The court imposed a fine of fifty dollars, and from this judgment the respondent appealed.

*Messrs. MacRae & Strange,* for the respondent.
*Messrs. Geo. Davis* and *Stedman & Latimer, contra.*

SMITH, C. J.  This appeal brings up for review the question of the power of the court, upon the facts found and set out in the record, to adjudge the defendant guilty of a contempt and to impose a fine for the offence.

The subject is not left as at common law in this state, but is regulated by an act passed in 1869, the first section of which enumerates the acts which severally constitute a contempt, and prescribes and limits the punishment which may be inflicted when either one specified has been committed.  To remove

doubt as to the effect of this enactment, an amendatory statute was passed in 1871, which declares that "the several acts, neglects and omissions of duty, malfeasances, misfeasances and non-feasances specified and described in the said act of April, 1869, shall be, and they are hereby declared to be, the only acts, neglects, omissions of duty, malfeasances, misfeasances and non-feasances which shall be subject of contempt of court; and further, that "if there be any parts of the common law now in force in this state, which recognized other acts, neglects, omissions of duty, malfeasances, misfeasances and non-feasances besides those specified and described in the said act, the same are hereby repealed." Acts 1868–'69, ch. 177; Acts 1870–'71, ch. 216, contained in Bat. Rev., ch. 24.

The facts upon which the present proceeding is founded, and constituting the criminal conduct of the defendant, are as follows:

A civil action previously commenced by one Mildred A. Oldham as administratrix of C. W. Oldham, deceased, against the Wilmington & Weldon Railroad Company, was pending and for trial at that term of the superior court of New Hanover, wherein damages were claimed for neglect and mistreatment of the intestate, a passenger on the train of the company, resulting, as alleged, in his death. The defendant caused to be published an account of the transaction, of which it is only necessary to say it was well calculated to prejudice the defence of the company, and, if acted on, subject it to heavy damages in the rendition of the jury-verdict. On the Saturday preceding the sitting of the court, the defendant handed a copy of this hand-bill to one John A. Farrow, then under summons as a regular juror to serve at the approaching term, at the same time saying to him: "Read this." The juror informed the defendant that he would be on the jury the following week, whereupon the defendant handed him two other copies, with a request that he would hand them to the others. The list of jurors drawn for the term had been published in the newspapers in Wilmington for several weeks before that time.

The criminality of the defendant's conduct in furnishing the juror with the hand-bill and requesting him to read it, not corrected or modified after he was informed that the person to whom it was given was a juror, summoned to serve at the term when the cause was standing for trial, and might perhaps be put upon the jury to try it, consists in the imputed purpose to preoccupy the mind of the juror, and prevent a fair and impartial verdict upon the merits, as they might be disclosed in the evidence.

It is very properly conceded that the defendant has not committed a contempt, if the statute is operative in confining contempts to the acts specified, and forbidding the punishment of all others, as such, by the court. But it is contended that the power to punish one who attempts, by improper influences brought to bear on a juror, to prevent the course of justice, is an inherent attribute of the court, necessary in the discharge of its official duties, and beyond the reach of legislative authority, under section twelve of article four of the constitution, which declares that "the general assembly shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it, as a co-ordinate department of the government."

While the essential judicial functions are thus protected in the fundamental law from legislative encroachment, it is equally manifest that subordinate thereto, the law-making power may designate the cases in which the power to summarily punish for a contempt shall be exercised; may prescribe its nature and extent, and prohibit in others.

The inquiry to be answered then is, whether the withdrawal or denial of the right of the judge, under the circumstances of the present case, to proceed and try and punish the offender without an intervening jury, does so invade the jurisdiction of the court, and impair its inherent and essential functions, as such, so as to fall under the constitutional inhibition. Unless such be its effect, the enactment must be upheld as a rightful

exercise of legislative authority, in specifying what acts alone shall constitute a contempt, and expose the party to limited and defined penalties, in order that the law may be known and observed.

The conduct of the defendant, reprehensible as it was, and perhaps the subject of criminal prosecution, as tending corruptly to influence the administration of justice, was nevertheless not in the presence, nor during the session of the court, so that it could interrupt a judicial proceeding and needed an instant repression; and we are unable to see why an indictment, if it will lie, will not afford as ample protection to the court as the exercise of the denied power to act summarily afterwards.

The courts must, in the language of Dick, J., in *ex-parte Schenck*, 65 N. C., 366, "have the power by summary remedies to preserve order during their session, control the action of their officers and enforce their mandates and decrees," and this power is "inherent in the court and essential to the exercise of its jurisdiction and the maintenance of its authority," as declared in *Pain* v. *Pain*, 80 N. C., 322.

It cannot be doubted that the withdrawal of the power to punish for contempt would be to cripple it in the exercise of its functions and impair its essential attributes; and that legislation attempting to do this would be wholly inoperative and void. It was needless to cite authorities in support of a proposition so manifest, for otherwise justice could not be administered, and the court would be deprived of the means of preserving its own existence.

But short of this, the legislature may define the acts which shall be treated as contempts, and designate the final consequences incurred in committing them. Upon the point now under consideration, we do not think the legislation an invasion of the necessary functions appertaining to the judicial department. The enactment may prove an unwise and inconvenient restraint upon the self-defending power of the court, as exer-

cised hitherto, and may impair its efficiency in administering distributive justice, but of this we are not to judge, and our province is limited in enforcing constitutional limitations and seeing that the court is not deprived of its just and necessary prerogatives in the performance of judicial duties. The force of the enactment is recognized in *Kane* v. *Haywood*, 66 N. C., 1, in restricting the judicial authority over practicing attorneys, and PEARSON, C. J., in direct terms, says that "the constitutionality of the statute *with certain savings in respect to the inherent rights of the court* (the italics are his own) is settled by *ex-parte Schenck.*"

We refrain from passing upon the other exceptions, as the point decided disposes of the case. There is error, and the judgment is reversed. This will be certified to the court below.

Error.                                 Reversed.