## IN RE GORHAM.

(Filed December 23, 1901.)

1. CONTEMPT—*Punishment as for Contempt—The Code, Sec. 654, Subsec. 3.*

Under The Code, Sec. 654, Subsec. 3, a person may be punished, *as for contempt*, for unlawful interferences with proceedings in any action.

2. CONTEMPT—*Punishment as for Contempt—The Code, Sec. 654, Subsec. 5—Juror.*

Under The Code, Subsec. 5, a juror may be punished, *as for contempt*, for allowing himself to be improperly influenced.

3. CONTEMPT—*Jury Trial.*

Respondents in a proceeding as for contempt are not entitled to a jury trial.

4. FINDINGS OF COURT—*Judge—Appeal.*

The findings of fact by a trial judge in a proceeding as for contempt, there being evidence, can not be reviewed on appeal.

5. CONTEMPT—*Purging.*

The respondents in a proceeding as for contempt can purge themselves only where the intention is the gravamen of the offense.

This was a proceeding to punish *as for contempt.* The acts were alleged to have been committed by the respondents during the trial of the civil action of B. F. Long, administrator, against the North Carolina Railroad and others, in Iredell Superior Court, at its May Term, 1901, and upon the answers of the respondents and the affidavits filed in the matter, his Honor, Judge George H. Brown, found the following facts:

"1. That after the jury were empaneled in said action. the Court instructed them, in addition to the usual instruc-

In re Gorham.

tion, that it was their duty to report to the Court the name
of any person who attempted to talk to them about the case
or in their presence, and had each member of the jury to so
promise the Court upon their honor.    He further advised the
jury not to associate with anyone connected with the case
during the trial.

"2. That while the trial was in progress, and just as the
jury were discharged from Court on Friday evening, May
24, R. A. Ramsey placed himself at one of the exits of the
court-house grounds, and there met juror B. C. Deaton and
took him to a bar-room and treated him to a drink of whiskey,
and remained with him for about two hours, until about the
ringing of the bell for the night session of the Court, and
was seen in earnest conversation with him.    That after Dea-
ton had gone back to the court-house, Ramsey declared it was
his purpose in his communications with Deaton to influence
his verdict in favor of the defendant in said cause, and that
was his only business here, and the Court also finds as a fact
that he attempted to carry out his said purpose.

"3. That J. A. Gorham is the law agent of the Southern
Railway Company, which company is defending said suit
in behalf of the said N. C. R. R. Co., and the State Univer-
sity R. R. Co., and has been present during the trial, sit-
ting in the bar and assisting counsel therein, and that the
fact was known to juror J. H. Brown.    That after the ad-
journment of the Court at its night session on Friday, May
24, the said J. A. Gorham and the juror J. H. Brown were
together, holding a long and close conversation in front of the
Hotel Iredell, which continued for something like two hours,
and until the hotel doors were closed for the night and most
of the guests had retired.    That the said law agent and juror
talked about the case on trial.    That about the hour of 11
o'clock, the said Gorham left his seat; went into the hotel,
ascended partly up the first stairway, where he remained un-

til the juror Brown overtook him. That prior to this, juror Brown had left the seat where he sat talking with Gorham, crossed the street to the court-house well, and remained for two or three minutes and then returned, joining Gorham on the stairway; that both of said parties then went to the room of said Gorham, No. 18, on the third floor, locked the door and extinguished the light, and remained together until the next morning; that the said Brown went to Gorham's room in consequence of an agreement between them that Brown should occupy a bed in said Gorham's room and that it should cost him nothing—Gorham saying that it cost him nothing.

"4. That soon after, within a few minutes, after the said parties went to said room, three of plaintiff's attorneys, who had been advised of such proceedings, went to the said room, knocked upon the door twice, and received no response.

"5. That the next morning, about 7 o'clock, juror Brown went down to the hotel clerk and stated that he had occupied a bed in room No. 18, and would pay for it before leaving Court. That said Brown had not registered as a guest. That shortly after Brown left room 18, Gorham opened the door to start down, and saw Geo. B. Nicholson, one of the plaintiff's counsel, standing in the hallway and dodged back. That he shortly afterwards went downstairs and told the hotel clerk that Brown had staid in his room the night before, but also said that he did not know he was a juror until he (Brown) told him. The Court finds as a fact that said Gorham and said Brown knew each other as a juror and law agent before any of said conversations or actions took place.

"6. The Court finds as a fact that the object and purpose of the said J. A. Gorham and J. H. Brown was to improperly and unlawfully influence the verdict of the said J. H. Brown in favor of the defendant in the said case on trial.

"7. As to juror Deaton, by consent of all parties, the rule is discharged.

"8. As to L. C. Caldwell, and as to his conversation with R. A. Ramsey and juror Brown, and his connection with J. A. Gorham at the hotel, the Court is not able to find as a fact that said L. C. Caldwell had any unlawful or corrupt or wrongful purpose, and the rule as to him is therefore discharged."

Thereupon the following order and judgment were entered:

"Upon the foregoing facts, it is adjudged that J. A. Gorham, J. H. Brown and R. A. Ramsey are guilty of gross contempt of this Court, and have attempted to pervert the course of justice and to obstruct the enforcement of the civil remedies and rights of the plaintiff in the civil action pending in this Court, wherein B. F. Long, administrator, is plaintiff, and the N. C. R. R. Co. et al. are defendants, in the following particulars:

"1. That the said respondent J. A. Gorham has attempted to corrupt and influence J. H. Brown, one of the jurors sworn to try the said case, and has been guilty of conduct that tended to defeat, impair, impede and prejudice the rights and remedies of the plaintiff in the above-entitled suit.

"2. That the respondent R. A. Ramsey had attempted to corrupt and influence the juror B. C. Deaton, to the prejudice of the plaintiff, B. F. Long, administrator, in the above-entitled action, and has been guilty of conduct that tended to defeat, impair, impede the rights and remedies of the said B. F. Long, administrator, plaintiff in the said suit.

"3. That the respondent J. H. Brown, one of the jurors sworn to try the said case, has permitted himself to be corrupted and influenced by the respondent J. A. Gorham, to the prejudice of the plaintiff, B. F. Long, administrator, in the said suit, and has been guilty of conduct that tended to defeat, impair and impede the rights and remedies of the said B. F. Long, administrator, plaintiff in said suit, and the due and orderly course of justice.

"It is therefore adjudged that the respondents, J. A. Gorham, R. A. Ramsey, J. H. Brown, are guilty as for contempt of the Court in the particulars above specified and set forth, and it is further adjudged:

"1. That the said J. A. Gorham be committed to the common jail of this county for twenty days, and be fined fifty dollars ($50.00), and that he is further adjudged to pay the costs of this rule, and to be confined till the said fine and costs are paid.

"2. That the said R. A. Ramsey be committed to the common jail of Iredell County for twenty days, and shall pay a fine of fifty dollars ($50.00) and costs, and shall pay the fine and costs before being discharged.

"3. That the said J. H. Brown be fined fifty dollars and costs, and shall be in custody of the Sheriff till said fine and costs are paid."

From the judgment of the Court, the respondents appealed.

*Osborne, Maxwell & Keerans,* for Gorham.
*J. F. Gamble,* for Ramsey and Brown.
*Brown Shepherd,* for Attorney-General, *contra.*

MONTGOMERY, J.   This proceeding in the Court below, as the record discloses, had for its object the punishment of the respondents *as for contempt* of Court, and the judgment was pronounced against them *as for contempt.*   But the argument for the State here was also directed to the proposition that the judgment could be supported on the ground that the facts constituted a case of contempt of Court.   In support of this proposition, numerous authorities were referred to, but in none of those jurisdictions were the statutory laws like those of our State on this subject.   One of them, however, *People v. Wilson,* 64 Ill., 195, 16 Am. Rep., 528-531, contains a most significant expression; it is said there: "The statute may

be regarded as a limitation upon the power of the Court to
punish for any other than those acts committed in its pres-
ence.    In this power would be necessarily included all acts
calculated to impede, embarrass or obstruct the Court in the
administration of justice.    Such acts would be considered as
done in the 'presence of the Court."    But the peculiarities
of the language used in our statutory law, and the decisions
of this Court upon that law, forbid us from following such
precedents.    Chapter 14 of The Code, a compilation of the
acts 1869 and 1870-71, concerning contempt, embraces the
whole law of our State at the present time on that subject.
With the origin, history and objects of those acts the older
lawyers of the State are familiar, and it would serve no good
purpose to enter upon a discussion of the same.    The act of
1868 was exactly the law which we now have embodied in
Chapter 14 of The Code, except that subdivision 7 of section
1 of that act, concerning the publication of the proceedings
in Courts of Record, was amended by the act of 1871, there
being added also in the act of 1871 a section concerning the
debarring of attorneys of their license to practice law, and
two further sections in the following words: "Section 2.  That
the several acts, neglects and omissions of duty, malfeasances
misfeasances and nonfeasances specified and described in said
act of April, 1869, as hereby amended, shall be and they are
hereby declared to be the only acts, neglects and omissions of
duty, malfeasances, misfeasances and nonfeasances which shall
be subject of contempt of Court.    Section 3. That if there be
any parts of the common law now in force in this State which
recognized other acts, neglects, omissions of duty, malfea-
sances, misfeasances or nonfeasances besides those specified
and described in said act, the same are hereby repealed and
annulled."    The preamble to the act of 1871 refers indi-
rectly, but clearly, to an opinion of this Court delivered by
Chief Justice Pearson in the case of *Ex Parte Moore*, 63 N.

C., 397, in which it was said that there were other matters
and acts which were the subjects of contempt at common law
which were not embraced in the act of 1869, and the added
sections above quoted were the admitted result of that opin-
ion of the Court.    This Court has repeatedly held that the
act of 1871, limiting the power of the Courts to punish for con-
tempt to the particular instances and acts embraced in the act
of 1869 was not unconstitutional.    *Ex Parte Schenck,* 65
N. C., 353; *In re Oldham,* 89 N. C., 23; *Kane v. Haywood,*
66 N. C., 1.    In the last-mentioned case, the Court said,
Chief Justice Pearson delivering the opinion: "The preamble
(to the act of 1871) sets out that doubts have been expressed
as to the construction of the act of 1869, by reason of which
the judicial authority has asserted that other acts of con-
tempt not specified in said act still exist at the common law,
and the Courts have assumed to exercise jurisdiction over the
same, and to impose other punishments therefor.    The statute
then goes on with *a manifest intention to restrict the power
of the judiciary just as far as the Constitution permits
the General Assembly to do* (italics ours), and confines the
neglects and omissions of duty, malfeasances, etc., to the spec-
ified particulars in the act of 1869, and for fear of evasion
by the Courts, it is enacted 'If there be any parts of the
common law now in force in this State which recognize other
acts, neglects, malfeasances, etc., etc., the same are hereby
repealed and annulled.' "    The facts in the case before us
do not fall under the specifications of contempt in Chapter
14 of The Code, and the respondents are therefore not guilty
of contempt.    They would be but for the act of 1871, al-
though not specified in The Code, for, but for that act, we
would have no hesitancy in saying, as was said in *Ex Parte
Moore,* that the act of 1869 did not embrace all the acts
which, at common law, constituted contempt.    But as we
have said in the beginning of this opinion, this matter was

proceeded with in the Court below *as for contempt,* and particularly under subdivision 7 of section 654 of The Code, which is in these words: "All other cases where attachments and proceedings as for contempt have been heretofore adopted and practiced in courts of record of this State to enforce civil remedies, or protect the rights of any party to an action." That provision clearly applies to civil remedies, as was decided in the matter of *In re Deaton,* 105 N. C., 59. In the argument here our attention was called to section 656 of The Code, which is in these words: "To sustain a proceeding as for contempt, the act complained of must have been such as tended to defeat, impair, impede or prejudice the rights or remedies of a party to an action then pending in Court," and it was insisted that that section covered the facts in the case before the Court. But we think that that section must refer only to those specifications of acts which subject persons to punishment *as for contempt* set out in section 654 of The Code, and restricted instead of being matter of aider. But we think, from the facts found by his Honor, that the respondents Gorham and Ramsey unlawfully interferred with the proceedings of an action pending and being tried by him, and in doing so, violated the law as it is written in the last sentence of sub-section 3 of section 654 of The Code, and that for that offense the judgment and sentence pronounced upon them should be sustained. The whole of subsection 3 (prefaced by the opening words of section 654, "every Court of record shall have power to punish as for contempt"), reads as follows: "All persons for assuming to be officers, attorneys or counsellors of the Court, and acting as such without authority, for receiving any property or person which may be in custody of any officers by virtue of any order or process of the Court, for unlawfully detaining any witness or party to any suit, while going to, remaining at or returning from the Court where the same may be set for trial, or for the unlawful interference

with the proceedings in any action." The acts for which the respondents were found guilty were interferences with the proceedings in that action of the most unlawful and reprehensible kind. As to the juror Brown, the other respondent, the proceeding was also properly had as to him under subsection 5, section 654 of The Code, in which it is declared that punishment as for contempt may be awarded against "parties summoned as jurors for impropriety, conversing with parties or others in relation to an action to be tried at such Court, or receiving communications therefrom." The respondents were not entitled to a trial by jury, nor to have the findings of fact reviewed in this Court. There was evidence before his Honor to support the findings, and that is all that it required. *In re Deaton, supra.* Neither can their attempts to relieve themselves by avowals of lack of intention to bring the Court into contempt avail them. That rule—the disavowal of the imputed intent purges the contempt and relieves the respondent—applies only to that class of cases "where the *intention* to injure constitutes the gravamen of the offense." *Baker v. Cordon,* 86 N. C., 116.

Under the facts found, they can plead neither ignorance nor innocency. Upon a careful consideration of the whole case, we think the judgment must be

Affirmed.

CLARK, J., concurring. The administration of justice must be kept pure at its source. The evidence is set out in the record. The Court found thereon the following facts: 1. That the said respondent J. A. Gorham has attempted to corrupt and influence J. H. Brown, one of the jurors sworn to try the said case, and has been guilty of conduct that tended to defeat, impair, impede and prejudice the rights and remedies of the plaintiff in the above-entitled suit. 2. That the respondent R. A. Ramsey has attempted to corrupt and in-

fluence the juror B. C. Deaton, to the prejudice of the plaintiff, B. F. Long, administrator, in the above-entitled action, and has been guilty of conduct that tended to defeat, impair and impede the rights and remedies of the said B. F. Long, administrator, plaintiff in the said suit. 3. That the respondent J. H. Brown, one of the jurors sworn to try the said case, has permitted himself to be corrupted and influenced by the respondent J. A. Gorham, to the prejudice of the plaintiff, B. F. Long, administrator, in said suit, and has been guilty of conduct that tended to defeat, impair and impede the rights and remedies of the said B. F. Long, administrator, plaintiff in said suit, and the due and orderly course of justice."

The findings of fact, there being evidence, can not be reviewed on appeal. *In re Deaton,* 105 N. C., 59, and upon those facts the Judge could not do less than adjudge the respondents guilty. The sentence of $50 fine and twenty days' imprisonment each, for Gorham and Ramsey, the most guilty parties, and of $50 fine without imprisonment for Brown, were moderate sentences for an offense which, if unchecked, would overthrow and make contemptible the administration of justice.

The besetting sin of Courts is to go beyond their jurisdiction and supervise the action of the other departments, and the Courts should strive against that tendency. But, on the other hand, the judiciary should be firm and prompt to maintain and defend the exercise of their own prerogative and authority from the invasion of the other departments. *Suum cuique.* Let each department keep within its own limits.

The Constitution, Article IV, section 12, provides: "The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction which rightfully pertains to it as a co-ordinate department of the government." If the General Assembly had expressly enacted that such acts

as are here found to have been committed by the respondents, could not be punished by the Courts, it would have been a nullity as an attempt to deprive the judiciary of a power which has belonged to it from the remotest antiquity, and which has never been denied to any other Court, and which is an inherent power necessary to the very existence of any authority in the Courts.    If the moment a juror passes out of the court-room, hired lobbyists in the pay of powerful and wealthy suitors can take them in charge, suborn them, bribe them, sleep with them, treat them and snap their fingers with impunity at the Court, then indeed the judiciary is worse than "exhausted."    It will not avail that the parties can be tried for "embracery" at the next term, if all the Judge can do is to make a mistrial.    The injury is done, and the contempt of the Court most fully shown by preventing a trial at this term.    The contempt could not be more direct or palpable if a band of armed men had followed the jury to the court-house with threats of violence if their verdict was unfavorable, and had stood just outside the door to execute punishement if disappointed.    It is equally a contempt of Court whether a man meets a juror just outside the court-room with a bribe or a bludgeon in his hand.    If the Court can not prevent either because not done within the court-room, the administration of justice is no longer free.    The independence of the judiciary no longer exists.    If a juror can with impunity be bribed or bullied on this trial, the same thing can be done when these respondents are on trial for embracery at another term.    If jury lobbyists or "law-agents" can with impunity tamper with this verdict, they can with that.    It can not be justly imputed to any General Assembly that they passed an act intended or so worded as to justly mean that the administration of justice can be "defeated, impaired and impeded."    Were it possible that such an act had been passed, it would be our duty to declare it unconstitutional, and with

as great reason as the Court has ever done so in any case. If the Court can seriously question the power of the Legislature, acting within its exclusive power of laying taxes, to tax an emigrant agent $25, it can surely call in question the construction of any act which would deprive this department of its right to administer justice without being hindered by bribery and fraud. It is clearly stated by Smith, C. J., *In re Oldham,* 89 N. C., 23, that an act having such effect would be invalid. But, as the Judge below held, the Legislature, not wishing to deprive this co-ordinate department of any just powers inherently necessary for the administration of justice, provided in section 656 of The Code: "To sustain a proceeding as for contempt, the act complained of must have been such as tended to defeat, impair, impede or prejudice the rights or remedies of a party to an action then pending in Court," and The Code, section 654 (3) recognizes the power to punish as for contempt, among others, all persons guilty of "unlawful interference with the proceedings in any action." This legislative construction fits this case as a glove does the hand. That the power to punish for contempt is not restricted to those acts committed in view of the Court is further recognized by section 653 of The Code, which provides: "Whenever the contempt shall not have been committed in the immediate presence of the Court, or so near as to interrupt its business," notice shall issue to the defendant.

In Rapalje on Contempt, section 1, it is said: "The better opinion seems to be that legislative bodies have not power to limit or regulate the inherent powers of Courts to punish for contempt. This power being necessary to the very existence of the Court, as such, the legislature has no power to take it away or hamper its free exercise. This is undoubtedly true in the case of a Court created by the Constitution. Such a Court can go beyond the statute in order to preserve and enforce its constitutional powers, by treating as contempts

acts which may clearly invade them. On the other hand, the Circuit and District Courts of the United States, being the creatures of Congress, their powers and duties depend upon the act calling them into existence and subsequent acts extending or limiting their jurisdiction are valid. A statute which limits the amount of the fine or the term of imprisonment which the Courts may impose, does not deprive them of their power to enforce affirmatively their orders, or to enforce any decree." This inherent power applies to Superior Courts, Rapalje Contempt, sec. 1, and does not at common law inhere in inferior courts. *Ibid,* sec. 4. As to them, the power to punish for contempt is statutory.

In *Rhyne v. Lipscombe,* 122 N. C., 650, and many decisions following, it is held that an act of the Legislature depriving the Superior Court of its recognized power to review the Courts below was unconstitutional as depriving it of its inherent power and position. A *fortiori* would this act be unconstitutional if it is construed to deprive the Superior Court of its inherent power to punish such acts as those which directly, not constructively, "defeat, impair and impede" the administration of justice in that Court.

The respondents can not purge themselves in a case of this kind. That is admissible only "where the intention is the gravamen of the offense." The intention here is not to be considered, for it is the acts of the appellants which constitute the contempt.