IN THE MATTER OF THE IMPRISONMENT OF E. H. HENNIS

No. 34

(Filed 13 May 1970)

**1. Contempt of Court §§ 2, 4— direct contempt — picketing courthouse — sufficiency of findings to support wilful interference with trial**

A petitioner who was picketing the courthouse in which a superior court judge was holding trial cannot be punished for direct contempt of court on the ground that his conduct constituted a wilful interference with the trial, where there are no findings in the judge's contempt order, and no evidence in the record sufficient to support findings, that petitioner had knowledge that court was in session or that his conduct was interfering with the regular conduct of business at a court session.

**2. Habeas Corpus § 2; Courts § 9— review of contempt order — authority of another trial judge**

A superior court judge in a *habeas corpus* proceeding has no authority to reverse or modify the order of another superior court judge which held the petitioner in contempt of court; however, the judge does have authority to order the release of petitioner on bond while petitioner seeks to have the contempt orders reviewed on *certiorari* by the Court of Appeals.

ON *certiorari* to the Court of Appeals to review its decision reported in 6 N.C. App. 683, which affirmed an order entered July 22, 1969, by *May, Special Judge,* pursuant to *habeas corpus* hearing.

The petition of E. H. Hennis asserted he was illegally imprisoned in the Guilford County jail pursuant to orders entered July 16, 1969, by His Honor, Allen H. Gwyn, Superior Court Judge then presiding at the July 14, 1969 Session of Guilford Superior Court. Judge Gwyn found Hennis guilty of direct contempt of court and, as punishment therefor, sentenced him to jail for twenty days.

The hearing before Judge May, Superior Court Judge then presiding at the July 21, 1969 Session of Guilford Superior Court, was on Hennis' petition and Judge Gwyn's orders. Judge May made no findings of fact. He denied Hennis' petition on the grounds that the orders of Judge Gwyn were not void and, if erroneous, could be cor-

rected only by an appellate court. However, Judge May ordered the release of Hennis on bond pending appellate review.

Hennis excepted to Judge May's order and gave notice he would apply to the Court of Appeals for review on *certiorari*.

On September 3, 1969, the Court of Appeals granted Hennis' petition for *certiorari* to review Judge May's order. The Court of Appeals affirmed "(t)he order entered by Judge May denying petitioner's release on writ of habeas corpus." Judge Gwyn's findings of fact are set forth in the opinion of the Court of Appeals. On February 11, 1970, this Court allowed Hennis' petition for *certiorari*.

*Attorney General Morgan, Deputy Attorney General McGalliard and Staff Attorney Blackburn for the State.*

*Norman B. Smith for petitioner appellant.*

PER CURIAM.

**[1]** The case was before the Court of Appeals on *certiorari* to review Judge May's order. In response to the writ of *certiorari*, a transcript of the entire proceedings before Judge Gwyn was included in the record before the Court of Appeals and is now before us. The briefs and the opinion of the Court of Appeals relate primarily to the sufficiency of the findings of fact to support Judge Gwyn's orders. Under these circumstances, we deem it appropriate to treat the case as properly before us for determination of that question.

Judge Gwyn was presiding at the trial of a civil action for the collection of rent. According to his findings, Judge Gwyn observed "the movement of people to the windows. They appeared to be observing something that was happening on the outside." The court reporter informed him "that the court was being picketed by a man walking around the courthouse wearing a placard . . ." He left the bench and went to a window from which he observed Hennis "as he walked slowly around the courthouse wearing a picket sign . . ."

It was stipulated that it was sixty-one feet from the windows of the courtroom from which Hennis could have been observed and the closest point Hennis could have approached the courtroom and at the same time remained on the public sidewalk adjacent to the courthouse grounds. The record is silent as to the portion of the sidewalk on which Hennis was walking when observed from the (second floor) windows of the courtroom.

Pursuant to Judge Gwyn's directive, the sheriff brought Hennis from the sidewalk into the courthouse and into the courtroom where Judge Gwyn was presiding.

The findings of fact made by Judge Gwyn are based on his personal observations and on statements made to him by Hennis after the sheriff had brought Hennis before Judge Gwyn. The record contains a transcript of the colloquies between Judge Gwyn and Hennis in the courtroom. No other person gave testimony as to Hennis' conduct.

[2]  Judge May's order is based on well-established principles set forth by Moore, J., in *In re Burton*, 257 N.C. 534, 540-541, 126 S.E. 2d 581, 586. He concluded that he had no authority to reverse or modify Judge Gwyn's orders even if he considered they were erroneous, but that he had authority to order the release of Hennis on bond while Hennis sought to have Judge Gwyn's orders reviewed on *certiorari* by the Court of Appeals.

[1]  Examination of the transcript discloses the following: No admonition or directive was given Hennis to discontinue walking along the sidewalks adjacent to the courthouse wearing the sandwich sign. He received no notice or warning that his conduct constituted a disturbance of a court session until brought from the sidewalk to the courtroom and there questioned by Judge Gwyn. In the courtroom, when questioned by Judge Gwyn, he stated he "didn't do it with any intention of contempt," having been advised by the Police Department that this type of protest was permissible. No speaking or other noise was involved. Hennis attracted attention solely on account of the singular spectacle of a man strolling slowly along the sidewalk wearing the sandwich sign. He told Judge Gwyn: "I did not know nothing about whether you were in the courthouse today or not and to have no bearing on whatever is going on here today . . ."

There are no findings, and no evidence in the record sufficient to support findings, that Hennis had knowledge that court was in session or that he had knowledge his conduct was interfering with the regular conduct of business at a court session. Absent such findings, there is no support for the conclusion that Hennis' conduct constituted a *wilful* interference with the orderly functioning of a session of court. In our view, the general findings "that the acts and conduct of the said E. H. Hennis were wilful and malicious and tended to impair the respect due its (the court's) authority" are insufficient.

Upon the record before us, we hold that Judge Gwyn erred in ordering Hennis into custody on July 16, 1969, for direct contempt of court. Accordingly the case is remanded to the Court of Appeals

for the entry of an order directing that a judge presiding in the Superior Court of Guilford County enter an order providing for the release of Hennis from custody.

Mindful of Judge Gwyn's long and distinguished career as an enlightened, considerate and compassionate jurist, we are quite sure that he, if he were with us today, would concur in this disposition of the case.

Reversed and remanded.