IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-238

Filed 3 September 2024

Harnett County, No. 22 CRS 616

STATE OF NORTH CAROLINA

v.

GREGORY HAHN, Defendant.

Appeal by Defendant from order entered 10 October 2022 by Judge C. Winston Gilchrist in Harnett County Superior Court. Heard in the Court of Appeals 29 August 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Michael T. Henry, for the State.*

*Dobson Law Firm, PLLC, by Miranda Dues, for the defendant-appellant.*

STADING, Judge.

Defendant Gregory Hahn appeals from the trial court's order finding him in criminal contempt. For the reasons set forth below, we reverse the trial court's order.

## I. Background

In March 2020, the Chief Justice of the North Carolina Supreme Court entered an emergency order to address public health concerns over COVID-19. *See* Order of the Chief Justice Emergency Directives 1 to 2 (13 March 2020). Thereafter,

additional emergency directives ("the emergency directives") were ordered by the Chief Justice for county courthouses, among them Emergency Directive 21, addressing the use of face coverings, and Emergency Directive 22, requiring a plan for the resumption of jury trials. *See* Order of the Chief Justice Issuing Emergency Directives 21 to 22 (16 July 2020). On 14 May 2021, the emergency directive "that pertains to face coverings in court facilities" was modified, and "that decision [was left] to the informed discretion of local court officials." Order of the Chief Justice Modifying Emergency Directive 21 (14 May 2021). The next month, the Chief Justice revoked all outstanding emergency directives. *See* Order of the Chief Justice Revocation of Emergency Directives (21 June 2021).

Citing the authority provided by the emergency directives, the Senior Resident Superior Court Judge of Superior Court District 11A (the "Senior Resident Superior Court Judge, trial court, or judge") entered an order mandating the use of face masks on 25 June 2020. Additionally, the Senior Resident Superior Court Judge approved a plan to resume jury trials stating that "[p]otential jurors will be notified before reaching the courthouse of the rules regarding social distancing and of other requirements and steps being taken for the protection of their health and that of courthouse personnel and trial participants." Claiming consistency with "the most recent recommendations of the Chief Justice," on 10 March 2022, the Senior Resident Superior Court Judge, entered a "Joint Order on Masks" ("the local emergency order")

without an expiration date, that decreed:

1. Masks are optional in hallways, foyers, restrooms, meeting rooms and similar areas. Masks are encouraged for unvaccinated persons.
2. The presiding judge in each courtroom may decide, in their discretion, whether masks are required in their courtroom.
3. The ranking official is [sic] each courthouse agency (e.g., Clerk of Court, District Attorney, Guardian Ad Litem) shall determine, in their discretion, whether masks are required in their respective offices.
4. Any person who so chooses shall be permitted to wear a mask.
5. This order is subject to revision based on changing public health conditions and CDC guidance.

On 10 October 2022, as required by summons, Defendant reported for jury duty at the Harnett County Courthouse. He was directed to the jury assembly room along with other potential jurors to await orientation. While in this room, a courthouse employee asked Defendant to wear a mask, which he declined. The trial court was informed that Defendant would not wear a mask in the jury assembly room. After that, Defendant was removed from the jury assembly room during juror orientation and taken upstairs to a courtroom.

Once in the courtroom, the judge told Defendant that "it's a requirement [to wear a mask] in this courtroom where you're going to be a potential juror, and it's a requirement while you're seated with the other potential jurors downstairs in the jury assembly room." Defendant responded, "with all due respect, I will not be wearing a mask, sir." The judge informed Defendant, "if you decline to wear a mask, it's

3

contempt of court, which is punishable by up to thirty days in the Harnett County jail or a 500 dollar fine." To which, Defendant replied, "yes sir." Then, the judge charged Defendant with direct criminal contempt of court and asked if he had anything to say. Defendant responded, "no, sir." The judge found Defendant in direct criminal contempt of court and summarily punished him by imposing a twenty-four-hour jail sentence.

On a standardized form provided by the Administrative Office of the Courts ("the contempt order"), the judge entered a finding of fact that Defendant "REFUSED TO WEAR A MASK AFTER BEING ORDERED TO DO SO [THREE] TIMES." The form's prepopulated text listed as additional findings that "during the proceeding [Defendant] willfully behaved in a contemptuous manner" and his "conduct interrupted the proceedings of the court and impaired the respect due its authority." Based on the findings in the contempt order, the judge concluded that Defendant was "in contempt of court." Subsequently, Defendant petitioned this Court for a writ of *certiorari*, which was granted on 23 January 2023.

## II. Jurisdiction

Under N.C. Gen. Stat. §§ 5A-17 and 7A-27(b)(1), this Court has jurisdiction to hear Defendant's appeal of his contempt conviction. N.C. Gen. Stat. §§ 5A-17(a) (2023) ("A person found in criminal contempt may appeal . . . ."); *id.* 7A-27(b)(1) ("[A]ppeal lies of right . . . [f]rom any final judgment of a superior court . . . .").

4

## III. Analysis

The ability of a judge to maintain order is a necessary function underlying the administration of justice. And when appropriate, direct criminal contempt is a proper mechanism to facilitate order. Contempt of court is a well-established principle of our jurisprudence:

> [I]t is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court . . . the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions.

*Ex parte Terry*, 128 U.S. 289, 313, 9 S. Ct. 77, 83 (1888).

Inherent in this power is the ability of an entrusted public servant—the judge—to assess a criminal conviction to a citizen's record without the full gambit of protections provided by due process. The United States Supreme Court has explained this narrowly limited exception to due process requirements includes only:

> [C]harges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority" before the public.

*In re Oliver*, 333 U.S. 257, 275, 68 S. Ct. 499, 509 (1948). As such, it is incumbent upon judicial authorities exercising this power to use judicial restraint and act with well-reasoned discernment. *See In re Little*, 404 U.S. 553, 555, 92 S. Ct. 659, 660 (1972) ("Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.") (alteration in original). Safeguards are apparent in our criminal contempt statutes. *See In re Oldham*, 89 N.C. 23, 25 (1883) ("While the essential judicial functions are . . . protected . . . from legislative encroachment, it is equally manifest that subordinate thereto, the law-making power may designate the cases in which the power to summarily punish for a contempt shall be exercised; may prescribe its nature and extent, and prohibit in others."). In conducting our review, we remain mindful of the competing interests vital to our system of justice and are guided by the relevant statutory and precedential authority.

Criminal contempt can be imposed for those grounds enumerated in N.C. Gen. Stat. § 5A-11 (2023). *See In re Odum*, 133 N.C. 250, 252, 45 S.E. 569, 570 (1903). For a judicial official to find direct criminal contempt, the contemptuous act must be committed within their sight or hearing or in immediate proximity to the room where proceedings are being held that is likely to interrupt or interfere with matters then before the court. N.C. Gen. Stat. § 5A-13(a) (2023); *see Nakell v. Att'y Gen.*, 15 F.3d 319, 323 (4th Cir. 1994). In response to direct criminal contempt, the presiding

6

judicial official may summarily impose punishment "when necessary to restore order or maintain dignity and authority of the court and when the measures are imposed substantially contemporaneously with the contempt." N.C. Gen. Stat. § 5A-14(a) (2023).

"[O]ur standard of review for contempt cases is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *State v. Wendorf*, 274 N.C. App. 480, 483, 852 S.E.2d 898, 902 (2020). "The trial court's conclusions of law drawn from the findings of fact are reviewable de novo." *Id.* Furthermore, "[a]s a contemnor is liable to be imprisoned the rule that a criminal statute should be strictly construed is applicable." *West v. West*, 199 N.C. 12, 15, 153 S.E. 600, 602 (1930).

## A. Contemptuous Act

Defendant asserts that the trial court's findings of fact do not support its conclusion of law that his actions amounted to a contemptuous act. The trial court based its order on two sections of the criminal contempt statute: "(1) Willful behavior committed during the sitting of a court and directly tending to interrupt its proceedings" and "(2) [w]illful behavior committed during the sitting of a court in its immediate view and presence and directly tending to impair the respect due its authority." N.C. Gen. Stat. §§ 5A-11(a)(1), (2).

7

The North Carolina Supreme Court has long recognized that interruptions of court proceedings include "all cases of disorderly conduct, breaches of the peace, noise, or other disturbance near enough and designed and reasonably calculated to interrupt the proceedings of a court then engaged in the administration of the State's justice and the dispatch of business presently before it." *State v. Little*, 175 N.C. 743, 745, 94 S.E. 680, 680 (1917). More recently, this Court affirmed a finding of contempt when a "[d]efendant was inaudibly speaking throughout the trial, facing the witness stand, and made a hand gesture in the form of a gun while the witness was testifying, causing the interruption." *State v. Baker*, 260 N.C. App. 237, 242, 817 S.E.2d 907, 910 (2018). The United States Court of Appeals for the Fourth Circuit similarly upheld a contempt conviction when the contemnor interrupted ongoing proceedings by "refusing to sit down when ordered to do so, refusing to be quiet, being disruptive of the proceedings, unduly prolonging the proceedings, pandering to the audience and encouraging [the] defendant [in the underlying case] to be disruptive." *Nakell*, 15 F.3d at 321-22. This Court's precedents also recognize that "[o]ur trial court judges must be allowed to maintain order, respect and proper function in their courtrooms" because "[c]ourtroom decorum and function depends upon the respect shown by its officers and those in attendance." *State v. Randell*, 152 N.C. App. 469, 473, 567 S.E.2d 814, 817 (2002) (holding refusal to stand for adjournment of court or answer the judge's questions are contemptuous actions).

The present matter vastly differs from the cases cited by the State or referenced above. The record shows that the actions of Defendant—who was reporting for jury service—neither interrupted the trial court's proceedings nor impaired the respect due its authority. Defendant was not a participant in ongoing proceedings in a courtroom. Rather, he reported to the courthouse to perform his civic duty as a potential juror. Before Defendant's presence was required in the courtroom for jury service, the judge summoned Defendant from the jury assembly room to his courtroom. Defendant complied with this direction. Upon entering the courtroom, Defendant's act of not wearing a mask did not disrupt the trial court's proceedings. Even so, the judge ceased ongoing business in the courtroom upon learning that Defendant "declined to wear a mask" in another room on a separate floor of the courthouse. In response to the inquiries posed by the judge to Defendant, he replied "yes, sir" or "no sir." Throughout their exchange, Defendant was respectful to the trial court. After the judge's admonishment to Defendant that "I've ordered you to do something" and "it appears that you have refused to do it," he was found in criminal contempt. Contrary to the State's argument, we see no parallel between Defendant's actions in this matter and the actions of the contemnors in their referenced cases. We hold that Defendant's refusal to wear a face mask was not a contemptuous act. Thus, the trial court's finding that Defendant "behaved in a contemptuous manner" is not supported by competent evidence, and, in turn, does

not support its conclusion of law. *See Wendorf*, 274 N.C. App. at 483, 852 S.E.2d at 902.

## B. Lawful Order

The text of the trial court's order reflects that its ruling is based on N.C. Gen. Stat. §§ 5A-11(a)(1) and (2). Even so, the State argues for the applicability of N.C. Gen. Stat. §§ 5A-11(a)(3) or (7), reasoning that Defendant was in contempt for "[w]illful disobedience of . . . a court's lawful process, order, directive, or instruction" or "[w]illful . . . failure to comply with schedules and practices of the court resulting in substantial interference with the business of the court." To resolve any doubt as to which subsection of the statute applies, we next consider whether Defendant was in contempt for willful disobedience of the trial court's lawful process, order, directive, or instruction pursuant to a valid local emergency order. Citing the rescinded 14 May 2021 emergency directive that deferred to the "discretion of local court officials," as well as the 10 March 2022 local emergency order mandating the use of face masks, the State maintains that "aside from . . . inherent authority to govern courtroom decorum," the trial court "possessed express discretionary authority to require masks." Order of the Chief Justice Modifying Emergency Directive 21 (14 May 2021).

The local emergency order was created under the authority provided by the emergency directives and purported to be "consistent with . . . the most recent

recommendations of the Chief Justice." By statute, the Chief Justice of the North Carolina Supreme Court is explicitly permitted to:

> Issue any emergency directives that, notwithstanding any other provision of law, are necessary to ensure the continuing operation of essential trial or appellate court functions, including the designation or assignment of judicial officials who may be authorized to act in the general or specific matters stated in the emergency order, and the designation of the county or counties and specific locations within the State where such matters may be heard, conducted, or otherwise transacted.

N.C. Gen. Stat. § 7A-39(b)(2) (2023). Beginning on 13 March 2020, citing this statute, emergency directives were issued by the Chief Justice. Order of the Chief Justice Emergency Directives 1 to 2 (13 March 2020). However, even emergency directives issued under this statutory authority "shall expire the sooner of the date stated in the order, or 30 days from issuance of the order, but [ ] may be extended in whole or in part by the Chief Justice for additional 30-day periods if the Chief Justice determines that the directives remain necessary." N.C. Gen. Stat. § 7A-39(b)(2). In any event, on 21 June 2021, the Chief Justice revoked all previously issued emergency directives. Order of the Chief Justice Revocation of Emergency Directives (21 June 2021). This included the emergency directive deferring to the discretion of local court officials to address face coverings in court facilities. Order of the Chief Justice Modifying Emergency Directive 21 (14 May 2021).

11

The authority underlying the local emergency order at issue was revoked. Particularly troubling, unlike the emergency directives issued by the Chief Justice under N.C. Gen. Stat. § 7A-39(b)(2), the local emergency order contained no corresponding expiration date. If orders issued by the Chief Justice, necessitated by emergency, expire on the earlier event of a stated expiration date or thirty-day time limitation, then any such orders derived from this authority cannot exceed the same temporal restrictions provided by the General Assembly. Our review of the State's argument on these statutory grounds leads us to conclude that this particular administrative order was invalid. Citing *Walker v. Birmingham*, which affirmed a lower court's holding protestors in contempt for violating an injunction subsequently declared invalid, the State maintains that Defendant's actions were unlawful regardless of the local emergency order's validity. 388 U.S. 307, 320-21, 87 S. Ct. 1824, 1832 (1967). While this argument ignores the United States Supreme Court's clarification that "this is not a case where the injunction was transparently invalid or had only a frivolous pretense to validity," we nevertheless proceed to evaluate the willfulness of Defendant's actions. *Id.* at 315, 87 S. Ct. at 1829.

### C. Willfulness

No matter the basis, to be found guilty of criminal contempt, "an individual must act willfully or with gross negligence." *State v. Okwara*, 223 N.C. App. 166, 170, 733 S.E.2d 576, 580 (2012). With contempt proceedings, for an act to be willful, "it

must be done deliberately and purposefully in violation of law, and without authority, justification or excuse." *State v. Chriscoe*, 85 N.C. App. 155, 158, 354 S.E.2d 289, 291 (1987). Willfulness "has also been defined as more than deliberation or conscious choice; it also imports a bad faith disregard for authority and the law." *State v. Phair*, 193 N.C. App. 591, 594, 668 S.E.2d 110, 112 (2008) (internal quotation marks and citations omitted). Gross negligence "implies recklessness or carelessness that shows a thoughtless disregard of consequences or a heedless indifference to the rights of others." *Chriscoe*, 85 N.C. App. at 158, 354 S.E.2d at 291 (citation omitted). Without findings "that [the defendant] had knowledge that court was in session or that he had knowledge his conduct was interfering with the regular conduct of business at a court session," there is not support for the conclusion that such conduct constitutes a willful interference with the orderly functioning of a session of court. *In re Hennis*, 276 N.C. 571, 573, 173 S.E.2d 785, 787 (1970).

Here, a misapplication of the local emergency order served as the impetus of the conflict. The text of the local emergency order plainly states that "[m]asks are optional in hallways, foyers, restrooms, meeting rooms and similar areas." Defendant had not violated the text of the local emergency order when confronted by an employee of the courthouse—not the judge, and he was in the jury assembly room— not the judge's courtroom. Even so, the judge compelled Defendant to enter the courtroom on another floor of the courthouse because the judge believed "it's a

13

requirement [to wear a mask] while . . . in the jury assembly room." The judge also informed Defendant of the same requirement in his courtroom where Defendant was "going to be a potential juror." But the record is clear that Defendant had not yet been called to the courtroom for this reason. Instead, he was preemptively summoned before the judge to address the incorrect belief that mask-wearing was required in the jury assembly room as well as perceived future noncompliance in his courtroom. There are no findings, nor evidence in the record sufficient to support findings, that Defendant could have known his discussion with the courthouse employee in the jury assembly room might directly interrupt proceedings or interfere with the court's order or business. *See id.* In the absence of these findings, there is no support for the conclusion that Defendant's conduct amounted to willful interference with the orderly functioning of a court session. *See id.* Accordingly, our review of the State's argument shows that Defendant did not willfully fail to comply with any of the asserted statutory grounds for criminal contempt.

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's judgment and order finding Defendant in direct criminal contempt of court.

REVERSED.

Judge WOOD concurs.

Judge GRIFFIN concurs in the result by separate opinion.

No. COA23-238 – *State v. Hahn*

GRIFFIN, Judge, concurring in result.

Mr. Hahn appeals from a trial court order finding him in contempt of court. The majority holds the State failed to show that Mr. Hahn willfully failed to comply with any of the asserted statutory grounds for criminal contempt. I agree with the result. However, I would hold the trial court's findings fail to support the conclusion that Mr. Hahn's act was "likely to interrupt or interfere with matters then before the court[,]" as necessary to support a direct criminal contempt action. *See* N.C. Gen. Stat. § 5A-13 (2021).

On 10 October 2022, Mr. Hahn appeared at the Harnett County Courthouse in response to a summons for jury duty. He was not provided prior notice of the court's COVID-19 guidelines. There were no signs or publications posted directing him to wear a mask upon arrival at the courthouse. Mr. Hahn assembled with other potential jurors, both masked and unmasked, before being singled out by a clerk for not wearing a mask. Mr. Hahn declined to wear one when asked by a clerk. Judge Gilchrist summoned Mr. Hahn into his courtroom, interrupting an on-going proceeding, to examine him about wearing a mask. Mr. Hahn respectfully answered every question Judge Gilchrist presented to him. In fact, Mr. Hahn bookended his answers with "Sir." However, Mr. Hahn would not put on a mask as requested. Judge Gilchrist held him in direct criminal contempt and sentenced Mr. Hahn to twenty-

four hours in jail. After sentencing but prior to being taken into custody, Mr. Hahn asked whether he would have the ability to contact his minor children. The trial judge stated he did not know about that. Notably, Mr. Hahn alleges Judge Gilchrist was not wearing a mask during the proceedings.

We review a criminal contempt order to determine "'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *State v. Wendorf*, 274 N.C. App. 480, 483, 852 S.E.2d 898, 902 (2020) (quoting *State v. Phair*, 193 N.C. App. 591, 593, 668 S.E.2d 110, 111 (2008)). "Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary." *State v. Robinson*, 281 N.C. App. 614, 619, 868 S.E.2d 703, 708 (2022) (citation and internal marks omitted).

Section 5A-11 of the North Carolina General Statutes provides an exhaustive list of acts constituting criminal contempt. N.C. Gen. Stat. § 5A-11 (2023). Direct criminal contempt occurs when an "act [enumerated in section 5A-11]: (1) [i]s committed within the sight or hearing of a presiding judicial official; and (2) [i]s committed in, or in immediate proximity to, the room where proceedings are being held before the court; and (3) [i]s likely to interrupt or interfere with matters then before the court." N.C. Gen. Stat. § 5A-13 (2023). "Criminal contempt is generally applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice." *State v. Simon*, 185 N.C. App. 247,

251, 648 S.E.2d 853, 855 (2007) (citation and internal marks omitted). While mindful that a trial court judge's ability to maintain order in their court room is paramount to the efficient administration of justice, *see State v. Randell*, 152 N.C. App. 469, 473, 567 S.E.2d 814, 817 (2002) ("Our trial court judges must be allowed to maintain order, respect and proper function in their courtrooms."), their discretion is not unfettered. Rather, "the law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion . . . [t]rial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *In re Little*, 404 U.S. 553, 555 (1972) (citations and internal marks omitted).

Here, the facts do not support a finding that Mr. Hahn's act was "likely to interrupt or interfere with matters then before the court." N.C. Gen. Stat. § 5A-13 (2023). For one, Mr. Hahn was not involved in any proceeding before the court when first admonished for failing to wear a mask. Rather, Mr. Hahn was present in an "assembly room" for potential jurors which could reasonably be construed to be a meeting room where masks were optional per the 10 March 2022 order. Moreover, Mr. Hahn's failure to wear a mask was unlikely to interrupt or interfere with any court business. The record fails to show evidence that Mr. Hahn took any affirmative action to impede a court proceeding. Instead, the record reflects that Judge Gilchrist stopped the proceedings in his courtroom to address Mr. Hahn. Simply put, the facts presented here reflect an offense to sensibilities, not an "obstruction to the administration of justice." *In re Little*, 404 U.S. at 555 (citation and internal marks

omitted).

I would hold these facts alone do not support the conclusion that Mr. Hahn interfered with the administration of justice.